

# NUMBER 13-11-00371-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**BUSINESS PRODUCT
SUPPLY,** **Appellant,**

**v.**

**MARLIN LEASING
CORPORATION,** **Appellee.**

### On appeal from the 117th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Longoria
### Memorandum Opinion by Justice Longoria

On September 18, 2006, Business Product Supply ("BPS"), a retailer of copy machines and other office equipment, filed this suit against Mark Thompson, one of its employees, and Marlin Leasing Corporation ("Marlin"), one of its major customers,

asserting various causes of action, including among others, breach of contract, breach of fiduciary duty, negligence, negligence per se, and fraud, arising from transactions dating as far back as 1999, when BPS first began selling office equipment to Marlin. BPS took an interlocutory default judgment against Thompson, but Marlin answered the suit, asserting various counterclaims against BPS, including among others, breach of contract and negligent misrepresentation. The case proceeded to trial on November 8, 2010. The trial court dismissed several of BPS's claims before it submitted the charge to the jury, which on December 2, 2010, returned a verdict in favor of Marlin on all claims by and against BPS. After the trial court entered a final judgment on the verdict, BPS filed this appeal, contending in eighty issues that it is entitled to a new trial because the trial court committed reversible error throughout the proceedings. For the reasons set forth below, we affirm the judgment of the trial court.[1]

## I. ISSUE ONE

In its first issue, BPS contends that the trial court erred in denying its requested question, instructions, and definitions regarding whether Marlin acted as a joint tortfeasor in Mark Thompson's breach of fiduciary duty to BPS. *See ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 881 (Tex. 2010) ("It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such.")

---

[1] Because the parties could not agree on a statement of facts, *see* TEX. R. APP. P. 38.1(g), and because this Court is not a finder of fact, *see Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998), we will recite additional facts only to the extent necessary to explain the basic reasons for our decision. *See* TEX. R. APP. P. 47.4 ("[T]he court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it.").

2

(quoting *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942)).

## A. Preservation of Error

"Parties and courts have long struggled with requirements for preserving charge error." *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 829 (Tex. 2012). "Our procedural rules state that a complaint to a jury charge is waived unless specifically included in an objection." *Id*. (citing TEX. R. CIV. P. 274; TEX. R. APP. P. 33.1(a)). "In *State Department of Highways & Public Transportation v. Payne*, recognizing that charge practice had become a 'labyrinth daunting to the most experienced trial lawyers,' . . . [the Texas Supreme Court] simplified the test for determining whether error was preserved." *Id*. (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 240 (Tex. 1992)). "Like most error preservation requirements, the inquiry focuses on the trial court's awareness of, and opportunity to remedy, the problem." *Id*. "There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *Payne*, 831 S.W.2d at 241. The Texas Supreme Court "articulated this requirement to simplify a process that had been beset with 'complex, intricate, sometimes contradictory, unpredictable rules' that 'hardly subserve[d] the fair and just presentation of the case.'" *Cruz*, 364 S.W.3d at 829 (quoting *Payne*, 831 S.W.2d at 241).

"Trial courts lack the time and the means to scour every word, phrase, and omission in a charge that is created in the heat of trial in a compressed period of time." *Id*. at 829–30. "A proposed charge, whether drafted by a party or by the court, may

3

misalign the parties; misstate the burden of proof; leave out essential elements; or omit a defense, cause of action, or . . . a line for attorney's fees." *Id*. at 830. "Our procedural rules require the lawyers to tell the court about such errors before the charge is formally submitted to a jury." *Id*. (citing TEX. R. CIV. P. 272). "Failing to do so squanders judicial resources, decreases the accuracy of trial court judgments and wastes time the judge, jurors, lawyers, and parties have devoted to the case." *Id*.

"A charge filed before trial begins rarely accounts fully for the inevitable developments during trial." *Id*. at 831. "For these reasons, our procedural rules require that requests be prepared and presented to the court 'within a reasonable time *after* the charge is given to the parties or their attorneys for examination.'" *Id*. (quoting TEX. R. CIV. P. 273) (emphasis in original). "Notwithstanding our rules, [the Texas Supreme Court has] . . . held that a party may rely on a pretrial charge as long as the record shows that the trial court knew of the written request and refused to submit it." *Id*. "Although trial courts must prepare and deliver the charge, we cannot expect them to comb through the parties' pretrial filings to ensure that the resulting document comports precisely with their requests—that is the parties' responsibility." *Id*. "Again, trial court awareness is the key." *Id*.

## B. Applicable Law

"Texas Rule of Civil Procedure 277 states that '[i]n all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions,' but this does not create an inflexible mandate." *Tex. Comm'n on Human Rights v. Morrison*, 381 S.W.3d 533, 537 (Tex. 2012) (quoting TEX. R. CIV. P. 277). "[W]hen the trial court is unsure whether it should submit a particular theory of liability, separating liability theories best

4

serves the policy of judicial economy underlying Rule 277 by avoiding the need for a new trial when the basis for liability cannot be determined." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000).

The trial court "is also required to give 'such instructions and definitions as shall be proper to enable the jury to render a verdict.'" *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855 (Tex. 2008) (quoting TEX. R. CIV. P. 277). "An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Id.*

## C. Standard of Review

"The standard for review of the charge is abuse of discretion." *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990); *see also Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012) ("The trial court has considerable discretion to determine proper jury instructions . . . .") (quotation omitted). "One way in which a trial court abuses its discretion is by failing to follow guiding rules and principles." *Hawley*, 284 S.W.3d at 855. "With the charge issues properly preserved and contested on appeal, an appellate court reviews the basis of the complaints and reverses only if the alleged charge errors were harmful." *Thota*, 366 S.W.3d at 691. "Error in the jury charge is reversible only if it is reasonably calculated to and probably did cause rendition of an improper judgment." *La.-Pac. Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex. 1998). "Charge error is generally considered harmful if it relates to a contested, critical issue." *Hawley*, 284 S.W.3d at 855; *see also Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001) ("An improper instruction is especially likely to cause an unfair trial when the trial is contested and the evidence sharply conflicting . . . .").

5

## D. Proceedings

The record reflects that, on November 29, 2010, BPS submitted three sets of proposed questions with instructions and definitions on its joint-tortfeasor claim. *See* TEX. R. CIV. P. 273 ("Either party may present to the court and request written questions, definitions, and instructions to be given to the jury; and the court may give them or a part thereof, or may refuse to give them, as may be proper."). The first asked, "On the occasion in question, were Marlin . . . and Mark Thompson engaged in a joint enterprise?" The trial court did not endorse its refusal of this proposed submission. *See* TEX. R. CIV. P. 276 ("When an instruction, question, or definition is requested and the provisions of the law have been complied with and the trial judge refuses the same, the judge shall endorse thereon 'Refused,' and sign the same officially."). The second asked, "Was [sic] Mark Thompson and Marlin . . . engaged in a joint enterprise?" This request included an instruction stating that "where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." The trial court endorsed its refusal of this requested submission. *See id.* Finally, the third asked, "Did Marlin . . . knowingly participate in Richard Mark Thompson[']s breach of fiduciary duty to . . . [BPS]?" The trial court endorsed its denial of the requested submission. *See id.*

Also on November 29, 2010, the trial court conducted a charge conference during which counsel for BPS made a second attempt to request the submission of BPS's proposed questions on the joint-tortfeasor claim.[2] The trial court interrupted

---

[2] The record indicates that the charge conference commenced at 7:13 a.m. The record also indicates that, at that time, the trial court had already provided the parties with the court's proposed charge. Although the record shows that the court endorsed its denial of BPS's requested submissions on the same date, it is unclear whether the trial court did so before, during, or after the charge conference.

6

counsel, stating, "These are all taken care of by the directed verdict." The court continued, "They're not going to be submitted because there's been a directed verdict granted." Counsel for BPS asked, "What about fiduciary?" And the court answered, "Again, another one which was denied by directed verdict." Then, counsel for BPS stated, "Plaintiff submits for joint venture." And the trial court responded, "Again, previously granted—I mean, granted a directed verdict with regards to those issues."

## E. Discussion

BPS argues that the trial court erred in failing to submit its proposed questions on its claim that Marlin was a joint tortfeasor in Thompson's breach of fiduciary duty to BPS. However, as set forth above, the trial court clearly stated—without objection by BPS—that it was refusing the requested submissions because a directed verdict had been granted on that claim and others. *See* TEX. R. APP. P. 33.1(a). Our review of the record indicates that the trial court had not previously announced that a directed verdict had been granted on the joint-tortfeasor claim.[3] This leaves two possibilities. One is that the trial court was simply mistaken about the status of the claim, thinking the claim

---

Only one of BPS's proposed submissions, a requested instruction on apparent authority, was endorsed by the trial court with a date and time, reflecting that the judge denied the request in writing at 7:18 a.m., which would have been during the charge conference.

[3] The claim was not included in the order granting Marlin's directed verdict dated November 19, 2010, which states that a directed verdict was granted in favor of Marlin as to the following:

1. Fraud

2. Malice

3. Negligence as to any claim that Marlin did not meet industry standard and general [sic] negligence, except as noted below

4. Gross negligence as to all matters except the failure of Marlin Leasing Company [sic] to notify John Hatton of the payment of points to Richard Mark Thompson

5. Negligent Misrepresentation

7

was dismissed when it was actually still pending. If so, it was BPS's obligation to make the trial court aware of the mistake. *See Cruz*, 364 S.W.3d at 829 (explaining that issue preservation requires "the trial court's awareness of, and opportunity to remedy, the problem"). A simple objection would have sufficed. *See* TEX. R. CIV. P. 272 ("[O]bjections shall in every instance be presented to the court in writing, or be dictated to the court reporter in the presence of the court and opposing counsel, before the charge is read to the jury."). By failing to object, BPS waived the error. *See id.* ("All objections not so presented shall be considered as waived.").

The second possibility is that the trial court intended to grant a directed verdict and was announcing that ruling for the first time during the charge conference.[4] If so, the trial court properly refused the requested submissions. *See* TEX. R. CIV. P. 278; *Harris County v. Smith*, 96 S.W.3d 230, 236 (Tex. 2002) ("Whether a granulated or broad-form charge is submitted, the trial court's duty is to submit only those questions, instructions, and definitions raised by the pleadings and the evidence."). Either way, BPS cannot prevail on this issue. Accordingly, it is overruled.

## II. ISSUE TWO

In its second issue, BPS argues that the trial court erred in denying its requested question, instructions, and definitions regarding whether Marlin knowingly participated in Mark Thompson's breach of fiduciary duty to BPS. This is the same claim that was the subject of BPS's first issue. *See Swinnea*, 318 S.W.3d at 881. Accordingly, for the

---

[4] We note that BPS has not assigned error to the trial court's granting of a directed verdict on its joint-tortfeasor claim. *See Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) (per curiam) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error.").

reasons stated above, we conclude that BPS cannot prevail on this issue. *See* TEX. R. APP. P. 47.1. Therefore, it is overruled.

## III. ISSUE THREE

In its third issue, BPS argues that the trial court erred in failing to include a question in the jury charge on its cause of action against Marlin for conspiring with Mark Thompson to cause Mark Thompson to breach his fiduciary duty to BPS.

### A. Proceedings

Our review of the record indicates that BPS submitted a proposed jury question on this claim, which the trial court denied in writing. *See* TEX. R. CIV. P. 273, 276. At the charge conference, the following exchange occurred:

[Counsel for BPS]: And finally, conspiracy.

The Court: Already denied at the directed verdict, but granted at your request—denied at your request, as an issue.

[Counsel for BPS]: And that would conclude our objections, Plaintiffs.

The Court: All right.

### B. Discussion

BPS argues that the trial court erred in failing to submit its proposed question on its claim that Marlin conspired with Thompson to cause Thompson to breach his fiduciary duty to BPS; however, the trial court clearly stated—without objection by BPS—that a directed verdict had been granted on that claim. *See* TEX. R. APP. P. 33.1(a). If so, then the trial court was not required to submit BPS's requested question.[5]

---

[5] Our review of the record indicates that the trial court had not previously announced that a directed verdict had been granted on the claim for conspiracy to breach fiduciary duty. The claim was not

9

*See* TEX. R. CIV. P. 278; *Harris County*, 96 S.W.3d at 236. Alternatively, if the claim had not been dismissed, BPS failed to make the trial court aware that the claim remained pending and thus failed to preserve this issue for appellate review. *See Cruz*, 364 S.W.3d at 829. As a result, BPS cannot prevail on this issue. Accordingly, it is overruled.

## IV. ISSUE FOUR

In its fourth issue, BPS argues that the trial court erred in granting a directed verdict on its fraud claim. In response, Marlin argues that the issue has been inadequately briefed and therefore waived. *See* TEX. R. APP. P. 38.1(i). We agree.

### A. Applicable Law

"Appellate courts should reach the merits of an appeal whenever reasonably possible." *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008). "[D]isposing of appeals for harmless procedural defects is disfavored." *Id.* The Texas Supreme Court has "instructed the courts of appeals to construe the Rules of Appellate Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule." *Verburgt v. Dorner*, 959 S.W.2d 615, 616–17 (Tex. 1997).

"The Texas Rules of Appellate Procedure require adequate briefing." *Swinnea*, 318 S.W.3d at 880. Furthermore, "error may be waived by inadequate briefing." *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994). "Points of error must be supported by argument and authorities, and if not so supported,

---

included in the order granting Marlin's directed verdict dated November 19, 2010 or the order granting Marlin's motions for summary judgment dated October 14, 2010. We note that BPS has not assigned error to the trial court's granting of a directed verdict or summary judgment on the claim for conspiracy to breach fiduciary duty. *See Pat Baker Co.*, 971 S.W.2d at 450.

10

the points are waived." *Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex. 1983); *see also Smith v. Tilton*, 3 S.W.3d 77, 84 (Tex. App.—Dallas 1999, no pet.) ("Points of error asserted on appeal but not briefed are waived.").

"It is not the proper role of this Court to create arguments for an appellant—we will not do the job of the advocate." *Paselk v. Rabun*, 293 S.W.3d 600, 613 (Tex. App.—Texarkana 2009, pet. denied); *G.R.A.V.I.T.Y. Enters. v. Reece Supply Co.*, 177 S.W.3d 537, 546 (Tex. App.—Dallas 2005, no pet.) ("This Court is not responsible for making [a party's] . . . arguments for it."). "[The parties] must put forth some specific argument and analysis showing that the record and the law support[] their contentions." *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.). "Failure to provide substantive analysis waives an issue on appeal." *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 722 (Tex. App.—Dallas 2011, pet. denied).

## B. Discussion

BPS contends that the trial court erred in granting a directed verdict on its fraud claim; however, in its appellate brief, BPS offers only the following statement in support of this issue:

> Marlin knew BPS was ignorant it was paying Thompson points, using lease funding to reduce its past due receivables, distributing to third parties, and using Thompson's services for Marlin[-]related business, for which Marlin induced BPS to take action that harmed BPS because BPS acted without knowledge of undisclosed facts and did not have an equal opportunity to discover.

11

In its brief, BPS has failed to (1) identify the grounds on which Marlin sought a directed verdict, (2) identify the grounds, if any, on which BPS opposed Marlin's motion for a directed verdict, and (3) provide a concise argument with appropriate citations to authorities and to the record to support its contention that the trial court erred in granting a directed verdict. *See* TEX. R. APP. P. 38.1(i). BPS has failed to apply the law to the facts of the case in a substantive analysis that demonstrates that the trial court erred in granting the directed verdict. *See MumboJumbo*, 350 S.W.3d at 722. Accordingly, we conclude that the issue is inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's fourth issue is overruled.

## V. ISSUE FIVE

In its fifth issue, BPS argues that the trial court erred in failing to submit its fraud claim in the jury charge. Since the claim was dismissed by directed verdict and BPS waived any error with respect to the ruling, BPS cannot establish reversible error in the trial court's refusal to submit the claim to the jury. *See* TEX. R. APP. P. 44.1(a).

BPS's fifth issue is overruled.

## VI. ISSUE SIX

In its sixth issue, BPS contends that the trial court erred in granting summary judgment on its breach of fiduciary duty claim. We have reviewed BPS's brief and have found no argument in support of this issue. *See* TEX. R. APP. P. 38.1(i). Accordingly, the issue has been inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's sixth issue is overruled.

## VII. ISSUE SEVEN

In its seventh issue, BPS contends that the trial court erred in failing to include its claim for breach of fiduciary duty in the jury charge. Since the claim was dismissed by summary judgment and BPS waived any error with respect to the ruling, BPS cannot establish reversible error in the trial court's refusal to submit the claim to the jury. *See* TEX. R. APP. P. 44.1(a).

BPS's seventh issue is overruled.

## VIII. ISSUE EIGHT

In its eighth issue, BPS contends that the trial court erred in "defacing and altering the jury's verdict by writing on the verdict notes characterizing BPS's claims and [the] Court's observations unrelated to the legal issues." We have reviewed BPS's brief and have found no argument in support of this issue. *See* TEX. R. APP. P. 38.1(i). Accordingly, the issue has been inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's eighth issue is overruled.

## IX. ISSUE NINE

In its ninth issue, BPS contends that the trial court erred in "[s]ubmitting superfluous and multifarious instructions with each question resulting in tilting the jury towards a verdict for Marlin . . . and against . . . [BPS]." We have reviewed BPS's brief and have found no argument in support of this issue. *See* TEX. R. APP. P. 38.1(i). Accordingly, the issue has been inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's ninth issue is overruled.

## X. ISSUE TEN

In its tenth issue, BPS contends that the trial court erred in "[p]lacing the defensive questions in the charge before the questions in which . . . [BPS] had the burden of proof." BPS made this objection during the charge conference, and it was overruled by the trial court. *See* TEX. R. CIV. P. 272. Therefore, the issue is preserved for our review. *See Thota*, 366 S.W.3d at 689.

### A. Applicable Law

"The goal of the charge is to submit to the jury the issues for decision logically, simply, clearly, fairly, correctly, and completely." *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999). "The trial court has broad discretion in submitting jury questions so long as the questions submitted fairly place the disputed issues before the jury." *Wooldridge v. TXU Electric Delivery Co.*, 236 S.W.3d 484, 487 (Tex. App.—Dallas 2007, no pet.).

### B. Discussion

BPS argues that the ordering of the questions "nudged the jury towards a favorable Marlin verdict [by] forcing the jury to consider affirmative defense questions before reaching BPS's affirmative claims." Having reviewed the charge as a whole, we are not persuaded that the ordering of the questions constituted an impermissible comment on the evidence or that it otherwise prevented the disputed issues from being fairly submitted to the jury. *See id.* The ordering of the questions did not indicate the judge's opinion or otherwise suggest an answer concerning a matter to be determined by the jury. *See Knoll v. Neblett*, 966 S.W.2d 622, 640 (Tex. App.—Houston [14th Dist.]

14

1998, pet. denied) ("[A charge is] rendered an impermissible comment when it indicates the judge's opinion concerning a matter to be determined by the jury."). BPS has failed to demonstrate how the ordering of the questions "nudged the jury towards a favorable Marlin verdict," and our review of the charge indicates that it did not. Accordingly, we conclude that BPS has failed to establish that the trial court abused its discretion in ordering the questions. *See E.B.*, 802 S.W.2d at 649.

BPS's tenth issue is overruled.

## XI. ISSUE ELEVEN

In its eleventh issue, BPS contends that the trial court erred in "[f]ailing to 'hook' Marlin's defensive questions to affirmative jury questions upon which BPS had the burden of proof." According to BPS, the trial "[c]ourt erred in affirmatively submitting Marlin's defensive questions (1, 2, and 3) rather than conditioning (hooking) them to affirmative responses to BPS's claims."

### A. Issue Preservation

At the charge conference, BPS objected "on the basis that Question No. 1 is not hooked to the breach of contract claim [Question No. 4]." *See* TEX. R. CIV. P. 272. The trial court overruled the objection. BPS did not make the same objection to question 2 or question 3. Therefore, the issue is preserved only as to question 1. *See Thota*, 366 S.W.3d at 689.

### B. Jury Charge and Verdict

In relevant part, the jury charge provided as follows:

15

<u>QUESTION NUMBER 1</u>

Did Mark Thompson have the actual or apparent authority to act for Business Product Supply with respect to the transactions with Marlin Leasing Corporation that are the basis of this lawsuit?

. . . .

Answer "Yes" or "No."

Answer: <u>Yes</u>

. . . .

<u>QUESTION NUMBER 4</u>

Did Marlin Leasing Corporation fail to comply with its agreement, if any, with Business Product Supply?

. . . .

Answer "Yes" or "No" as to each element.

a.  By failing to fund equipment purchased from Business Product Supply via ACH electronic transfer to Business Product Supply's account with Frost Bank.

Answer: <u>No</u>

b.   By failing to fund soft assets via ACH electronic transfer to Business Product Supply['s] account with Frost Bank?

Answer: <u>No</u>

c.  By paying points or referral fees directly to Mark Thompson?

Answer: <u>No</u>

## C.  Discussion

BPS has not provided a clear and concise argument for its contention that the trial court erred in failing to predicate question 1 upon an affirmative finding of liability in answer to question 4.  *See* TEX. R. APP. P. 38.1(i).  BPS has not applied the controlling

16

law to the facts of the case in a substantive analysis that demonstrates that the trial court had no discretion to submit question 1 unconditionally. *See MumboJumbo*, 350 S.W.3d at 722. BPS states that "[b]y definition, affirmative defenses are responsive to a Plaintiff's claim and placing defense questions before the affirmative claims to which they apply puts the 'cart before the horse.'" Yet, BPS has not provided any argument or analysis to explain the significance of question 1 or how it could be used to establish an affirmative defense to the breach of contract claim in question 4. *See id.* In short, BPS has not established that the trial court put "the cart before the horse." To the extent that the issue has not been inadequately briefed, *see* TEX. R. APP. P. 38.1(i), we conclude that no abuse of discretion has been established. *See E.B.*, 802 S.W.2d at 649.

BPS's eleventh issue is overruled.

## XII. ISSUE TWELVE

In its twelfth issue, BPS contends that the trial court erred in "[f]ailing to submit a jury question and accompanying instructions on Marlin collaborating with Thompson to commit commercial bribery."

### A. Proceedings

Our review of the record indicates that BPS submitted a proposed jury question on this claim, which the trial court denied in writing. *See* TEX. R. CIV. P. 273, 276. At the charge conference, the following exchange occurred:

[Counsel for BPS]: [W]e are submitting one for commercial bribery and misapplication of fiduciary funds.

The Court: With regards to these submissions, it's already been denied by directed verdict on commercial bribery and breach of fiduciary duty.

### B. Discussion

17

BPS argues that the trial court erred in failing to submit its proposed question on commercial bribery; however, as set forth above, the trial court clearly stated—without objection by BPS—that it was refusing the requested submission because a directed verdict had been granted on that claim. *See* TEX. R. APP. P. 33.1(a). If the claim was dismissed, then the trial court was not required to submit BPS's requested question.[6] *See* TEX. R. CIV. P. 278; *Harris County*, 96 S.W.3d at 236. Alternatively, if the claim had not been dismissed, BPS failed to make the trial court aware that the claim remained pending, and therefore, the error, if any, was waived. *See Cruz*, 364 S.W.3d at 829; *see also* TEX. R. CIV. P. 272. Either way, BPS cannot prevail on this issue. Accordingly, it is overruled.

## XIII. ISSUE THIRTEEN

In its thirteenth issue, BPS contends that the trial court erred in "[f]ailing to submit a jury question and accompanying instructions on Thompson and Marlin's misapplication of fiduciary property."

### A. Proceedings

Our review of the record indicates that BPS submitted a proposed jury question on this claim, which the trial court denied in writing. *See* TEX. R. CIV. P. 273, 276. At the charge conference, the following exchange occurred:

[Counsel for BPS]: [W]e are submitting one for commercial bribery and misapplication of fiduciary funds.

---

[6] Our review of the record indicates that the trial court had not previously announced that a directed verdict had been granted on commercial bribery. It was not included in the order granting Marlin's directed verdict dated November 19, 2010. However, commercial bribery relates to BPS's claim for negligence per se, which the trial court dismissed by summary judgment on October 14, 2010. We note that BPS has not properly assigned error to the trial court's granting of summary judgment on this claim. *See Pat Baker Co.*, 971 S.W.2d at 450.

18

| The Court: | With regards to these submissions, it's already been denied by directed verdict on commercial bribery and breach of fiduciary duty. |

## B. Discussion

BPS argues that the trial court erred in failing to submit its proposed question and accompanying instruction on misapplication of fiduciary property; however, the trial court clearly stated—without objection by BPS—that a directed verdict had been granted on that claim. *See* TEX. R. APP. P. 33.1(a). If the claim had been dismissed, then the trial court was not required to submit BPS's requested question.[7] *See* TEX. R. CIV. P. 278; *Harris County*, 96 S.W.3d at 236. Alternatively, if the claim had not been dismissed, BPS failed to make the trial court aware that the claim remained pending, and the error, if any, was waived. *See Cruz*, 364 S.W.3d at 829; *see also* TEX. R. CIV. P. 272. Either way, BPS cannot prevail on this issue. Accordingly, it is overruled.

## XIV. ISSUE FOURTEEN

In its fourteenth issue, BPS contends that the trial court erred in "[f]ailing to submit a jury question and accompanying instruction on BPS['] damages to mitigate potential claims against Marlin lease customers."

## A. Proceedings

Our review of the record indicates that BPS submitted a proposed jury question on this claim, which asked, "What sum of money if paid now in cash would fairly and reasonably compensate . . . [BPS] for the amounts . . . [BPS] paid to Marlin . . . to

---

[7] Our review of the record indicates that the trial court had not previously announced that a directed verdict had been granted on misapplication of fiduciary property. It was not included in the order granting Marlin's directed verdict dated November 19, 2010. However, misapplication of fiduciary property relates to BPS's claim for negligence per se, which the trial court dismissed by summary judgment on October 14, 2010. We note that BPS has not properly assigned error to the trial court's granting of summary judgment on this claim. *See Pat Baker Co.*, 971 S.W.2d at 450.

19

mitigate the potential claims by Marlin lease customers?" *See* TEX. R. CIV. P. 273. The trial court denied the request in writing. See TEX. R. CIV. P. 276.

At the charge conference, the following exchange occurred:

[Counsel for BPS]: The Plaintiff further objects to the submission of Question No. D. on Question 8 as being the proper submission of the mitigation [of] damages.

The Court: Denied.

. . . .

[Counsel for BPS]: The Plaintiff also submits what should be a proper question and issue for the mitigation [of] damages to be submitted to the jury for both breach of contract [claims].

The Court: This is Question 1?

[Counsel for BPS]: Well, no, it should be Question 8. Let me fix that, to include an instruction as to mitigation [of] damages.

The Court: I think we have a general instruction in the instructions, do we not?

[Counsel for Marlin]: Yes, we do. It's in the general instructions.

The Court: All right.

[Counsel for BPS]: Plaintiff further objects to -- that concludes our objections to Question No. 8.

## B. Jury Charge and Verdict

In relevant part, the jury charge provided as follows:

### QUESTION NUMBER 8

What sum of money, if paid now in cash, would fairly and reasonably compensate . . . [BPS], for its damages, if any, that resulted from the conduct?

Answer separately in Dollars and Cents, for damages, if any.

20

. . . .

      b.     The reasonable and necessary payments made, if any, by . . . [BPS] to avoid potential claims by customers attributed solely to the wrongdoing of Marlin . . . and not attributable to any wrongdoing of . . . [BPS] or Mark Thompson?

Answer:     $72,105.08

## C. Discussion

BPS contends that it "was entitled to an instruction on mitigation in damage question 8." BPS further contends that the trial "[c]ourt erred [in] limiting the jury's inquiry of BPS's damages in [question] 8.b. and denying BPS a question on reasonable and necessary payments BPS made to avoid potential litigation constitutes a 'double dip' for Marlin." We disagree.

First, contrary to BPS's suggestion, the trial court did, in fact, submit question 8b on mitigation of damages. Second, to the extent that BPS contends that it was entitled to an instruction on mitigation, that issue was not preserved because BPS failed to make the trial court aware that there was no instruction on mitigation of damages and failed to object when counsel for Marlin told the trial court that an instruction had already been included in the charge, when it had not. *See Cruz*, 364 S.W.3d at 829. Third and finally, to the extent that BPS contends that the trial court erred in limiting the jury's inquiry regarding damages, it failed to make that objection and obtain a ruling from the trial court at the charge conference. *See Thota*, 366 S.W.3d at 689. In fact, the only objection counsel for BPS made was to the question being the "proper submission of the mitigation [of] damages," which did not make the trial court aware of the purported problem. *See Cruz*, 364 S.W.3d at 829. In any event, BPS has failed to provide a clear and concise argument for the contention made, with appropriate citations to authorities.

21

*See* TEX. R. APP. P. 38.1(i). Therefore, to the extent the issue was preserved for our review, if at all, *see Cruz*, 364 S.W.3d at 829, the error, if any, is waived by inadequate briefing. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's fourteenth issue is overruled.

## XV. ISSUE FIFTEEN

In its fifteenth issue, BPS contends that the trial court erred in "[f]ailing to submit jury questions asking specific inquiries [about] whether Mark Thompson was acting as an agent for both BPS and Marlin in directing and distributing lease funding, collecting from leases on past due accounts, authorizing payment of points, executing recourse agreements, and the accompany definition of agency." We have reviewed BPS's brief and have found no argument in support of this issue. *See* TEX. R. APP. P. 38.1(i). Accordingly, the issue has been inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284. Furthermore, the issue of Mark Thompson's dual agency with respect to the transactions at issue in this case was submitted to the jury in question 2, and BPS has not demonstrated that the trial court's failure to submit jury questions asking its specific inquiries was reasonably calculated to and probably did cause the rendition of an improper judgment. *See La. Pac. Corp.*, 976 S.W.2d at 676. Accordingly, even if the issue had not been waived, the error, if any, was not reversible. *See* TEX. R. APP. P. 44.1(a).

BPS's fifteenth issue is overruled.

## XVI. ISSUE SIXTEEN

In its sixteenth issue, BPS contends that the trial court erred in "[f]ailing to submit jury questions asking specific inquiries [about] whether Mark Thompson was acting as

22

an agent for both BPS and Marlin in accepting points and engaging in conduct benefitting Marlin to BPS's detriment." Our review of the record indicates that BPS submitted a proposed jury question with four sub-parts, as follows: (1) "directing the distribution of lease funding," (2) "collecting from leases on past due accounts," (3) "authorizing points to be paid directly to Mark Thompson," and (4) "executing recourse agreements." *See* TEX. R. CIV. P. 273. The trial court did not endorse its denial of the proposed question. *See* TEX. R. CIV. P. 276. More importantly, the proposed jury question did not include "accepting points" or "engaging in conduct benefitting Marlin to BPS's detriment." Accordingly, the trial court's failure to submit a question asking about Mark Thompson's capacity in "accepting points" and "engaging in conduct benefitting Marlin to BPS's detriment" is not a ground for reversal. *See* TEX. R. CIV. P. 278 ("Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment.").

Furthermore, as noted above, the issue of Mark Thompson's dual agency with respect to the transactions at issue in this case was submitted to the jury in question 2, and BPS has not demonstrated that the trial court's failure to submit jury questions asking its specific inquiries was reasonably calculated to and probably did cause the rendition of an improper judgment. *See La. Pac. Corp.*, 976 S.W.2d at 676. Accordingly, even if the issue had not been waived, the error, if any, was not reversible. *See* TEX. R. APP. P. 44.1(a).

BPS's sixteenth issue is overruled.

## XVII. Issue Seventeen

In its seventeenth issue, BPS contends that the trial court erred in "[f]ailing to submit BPS's requested instruction on 'apparent authority' in question 1." We have reviewed BPS's brief and have found no argument in support of this issue. *See* Tex. R. App. P. 38.1(i). Accordingly, the issue has been inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284. Moreover, the trial court submitted a definition of "apparent authority" in question 1, which BPS has failed to establish was incorrect. Thus, even if the issue had not been waived by inadequate briefing, BPS has not demonstrated that the trial court committed reversible error. *See* Tex. R. App. P. 44.1(a).

BPS's seventeenth issue is overruled.

## XVIII. Issue Eighteen

In its eighteenth issue, BPS contends that the trial court erred in "[f]ailing to submit BPS's requested instruction regarding whether Mark Thompson [was] acting in [the] course and scope of his employment." *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 296 (Tex. 2011) ("Generally, a master is vicariously liable for the torts of its servants committed in the course and scope of their employment."). The trial court submitted questions, instructions, and definitions pertaining to the issue of agency (i.e., whether Thompson had authority to act on behalf of BPS). *See Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007) ("An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)."). According to BPS, "[a]sking whether Thompson had actual or apparent authority to act on behalf of BPS

24

begs the question." However, BPS does not explain why that is so. *See* Tex. R. App. P. 38.1(i). Instead, it merely asserts without elaboration that "[t]he disputed fact [issue] was whether Thompson was acting outside the course and scope of his employment or was acting as an independent contractor . . . ." By failing to provide a substantive analysis in support of this contention, BPS has waived the error, if any, in the trial court's refusal to submit its requested instruction. *See MumboJumbo*, 350 S.W.3d at 722. Accordingly, the issue is overruled.

## XIX. Issue Nineteen

In its nineteenth issue, BPS contends that the trial court erred in "[f]ailing to submit BPS's requested instruction on whether Thompson was acting as an independent contractor." *See Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998) ("[An] individual or entity that hires [an] independent contractor is generally not vicariously liable for the tort or negligence of that person."). As set forth above, the trial court submitted questions, instructions, and definitions pertaining to the issue of agency (i.e., whether Thompson had authority to act on behalf of BPS). *See Gaines*, 235 S.W.3d at 182. According to BPS, "[a]sking whether Thompson had actual or apparent authority to act on behalf of BPS begs the question." However, BPS does not explain why that is so. *See* Tex. R. App. P. 38.1(i). Instead, it merely asserts without elaboration that "[t]he disputed fact [issue] was whether Thompson was acting outside the course and scope of his employment or was acting as an independent contractor . . . ." By failing to provide a substantive analysis in support of this contention, BPS has waived the error, if any, in the trial court's refusal to submit its

25

requested instruction. *See MumboJumbo*, 350 S.W.3d at 722. Accordingly, the issue is overruled.

## XX. ISSUE TWENTY

In its twentieth issue, BPS contends that the trial court erred in "[f]ailing to submit BPS's requested definition of 'agency.'" We have reviewed BPS's brief and have found no argument in support of this issue. *See* TEX. R. APP. P. 38.1(i). Accordingly, the issue has been inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's twentieth issue is overruled.

## XXI. ISSUE TWENTY-ONE

In its twenty-first issue, BPS contends that the trial court erred in "[f]ailing to submit BPS's properly worded question and accompanying instruction on breach of contract and whether the parties reached an agreement." In support of this contention, BPS offers the following statement:

> Court erred in improperly submitting Question 4 and denying BPS's question whether Marlin breached the agreement by failing to distribute all lease transaction funding to BPS and refusing to submit an accompanying instruction and definition regarding the bargain of the parties, course of performance, course of dealing or usage of trade.

The foregoing is a restatement of the issue presented, not a clear and concise argument for the contention made, with appropriate citations to authority. *See* TEX. R. APP. P. 38.1(i). The statement is deficient as an argument because it fails to analyze why it was error for the trial court to submit question 4 and deny BPS's question, instruction, and definition. *See Crawford*, 171 S.W.3d at 338 ("[The parties] must put forth some specific argument and analysis showing that the record and the law support[]

26

their contentions."). Accordingly, the issue has been inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's twenty-first issue is overruled.

## XXII. ISSUE TWENTY-TWO

In its twenty-second issue, BPS contends that the trial court erred in "[f]ailing to submit BPS's requested instruction to accompany question 22 regarding Marlin's duty to exercise ordinary care to protect its interests."

## A. Jury Charge and Verdict

In relevant part, the jury charge provided as follows:

QUESTION NUMBER 22

Did [BPS] . . . commit fraud against Marlin . . . ?

Fraud occurs when –

a. a party fails to disclose a material fact within the knowledge of that party;

b. the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth;

c. the party intends to induce the other party to take some action by failing to disclose the fact; and

d. the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

. . . .

Answer "Yes" or "No."

Answer: <u>Yes</u>

27

**B. Discussion**

As set forth above, "[t]he trial court has considerable discretion to determine proper jury instructions . . . ." *Thota*, 366 S.W.3d at 687. On appeal, BPS asserts that the trial court "erred in failing to instruct the jury in question[] . . . 22 regarding Marlin's duty to exercise ordinary care to protect its interests regarding BPS's alleged . . . fraud." However, BPS has failed to provide a clear and concise argument in support of this contention. *See* TEX. R. APP. P. 38.1(i). BPS has failed to provide a substantive analysis to establish that the trial court had no discretion to refuse the requested instruction. *See MumboJumbo*, 350 S.W.3d at 722; *see also Thota*, 366 S.W.3d at 687. Accordingly, the issue has been inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's twenty-second issue is overruled.

## XXIII. Issue Twenty-Three

In its twenty-third issue, BPS argues that the trial court erred in "[f]ailing to submit BPS's requested definition of colorable." We have reviewed BPS's brief and have found no argument in support of this issue. *See* TEX. R. APP. P. 38.1(i). Accordingly, the issue has been inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's twenty-third issue is overruled.

## XXIV. Issue Twenty-Four

In its twenty-fourth issue, BPS contends that the trial court erred in "[f]ailing to submit BPS's requested damage questions." We have reviewed BPS's brief and have found no argument in support of this issue except what we have previously addressed

in overruling BPS's fourteenth issue.  *See* TEX. R. APP. P. 38.1(i).  Accordingly, to the extent that this issue is not inadequately briefed, we overrule it for the reasons stated in connection with issue fourteen.  *See* TEX. R. APP. P. 47.4.  In all other respects, the issue is inadequately briefed, and the error, if any, is waived.  *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's twenty-fourth issue is overruled.

## XXV. ISSUE TWENTY-FIVE

In its twenty-fifth issue, BPS contends that the trial court erred in "[f]ailing to submit BPS's requested damage question to accompany Question 8.b."  We have reviewed BPS's brief and have found no argument in support of this issue except what we have previously addressed in overruling BPS's fourteenth issue.  *See* TEX. R. APP. P. 38.1(i).  Accordingly, to the extent that this issue is not inadequately briefed, we overrule it for the reasons stated in connection with issue fourteen.  *See* TEX. R. APP. P. 47.4.  In all other respects, the issue is inadequately briefed, and the error, if any, is waived.  *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's twenty-fifth issue is overruled.

## XXVI. ISSUE TWENTY-SIX

In its twenty-sixth issue, BPS contends that the trial court erred in "[f]ailing to submit BPS's requested questions defining false, misleading or deceptive acts or practices under the D.T.P.A."  In support of this issue, BPS asserts that "[t]he eleven additional requested submissions for false, misleading and deceptive acts under the D.T.P.A. were improperly denied."  The issue is inadequately briefed because BPS has failed to provide a clear and concise argument or substantive analysis for why it was

29

improper for the trial court to deny each of the requested submissions, which BPS references collectively, but fails to identify or discuss individually. *See* TEX. R. APP. P. 38.1(i); *MumboJumbo*, 350 S.W.3d at 722. Accordingly, the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's twenty-sixth issue is overruled.

## XXVII. ISSUE TWENTY-SEVEN

In its twenty-seventh issue, BPS contends that the trial court "erred in denying [BPS] . . . judgment against Marlin . . . for sanctions and attorney fees in the frivolous claim Marlin asserted under the Texas Deceptive Trade Practices Act."

### A. Applicable Law

In relevant part, the DTPA provides as follows: "On a finding by the court that an action under this section was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs." TEX. BUS. & COM. CODE ANN. § 17.50(c) (West 2011). "The Texas Supreme Court has held the term 'groundless' has the same meaning in the DTPA and Rule 13, i.e., 'no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law.'" *Mosk v. Thomas*, 183 S.W.3d 691, 695 (Tex. App.—Fort Worth 2003, no pet.) (quoting *Donwerth v. Preston II Chrysler-Dodge, Inc.*, 775 S.W.2d 634, 637 (Tex. 1989)). "The standard for determining whether a suit is groundless considers whether the totality of the tendered evidence demonstrates an arguable basis in fact and law for the consumer's claim." *Id.* at 695–96 (quotations omitted).

30

## B. Standard of Review

"The court, not the factfinder, must determine the existence of groundlessness, bad faith and harassment under section 17.50(c)." *Donwerth*, 775 S.W.2d at 637. "Appellate review of such trial court determinations is a question of law under an abuse of discretion standard." *Id*. at 637 n.3. "The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action." *Downer v. Aquamarine Operators, Inc*., 701 S.W.2d 238, 241 (Tex. 1985). "Rather, it is a question of whether the court acted without reference to any guiding rules and principles." *Id*. at 241–42. "Another way of stating the test is whether the act was arbitrary or unreasonable." *Id*. at 242. "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Id*.

## C. Discussion

BPS argues that Marlin's DTPA claim was groundless because Marlin has assets of $25 million or more and therefore is not a "consumer" within the meaning of the DTPA and not authorized to bring a claim for violation of the DTPA. In relevant part, the DTPA provides as follows:

> "Consumer" means an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

TEX. BUS. & COM. CODE ANN. § 17.45(4) (West 2011). "Whether a plaintiff is a consumer under the DTPA is a question of law to be determined by the trial court from the

31

evidence." *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 133 (Tex. App.—Corpus Christi 2001, no pet.). "However, the underlying factual basis giving rise to consumer standing may present factual issues for the jury." *Id.*

In its motion for entry of partial judgment, BPS stated that Marlin's DTPA claims were based on roughly 200 lease transactions between 1999 and 2006, approximately 23 of which occurred in 1999, when Marlin qualified as a consumer because it did not have assets of $25 million or more. For its part, Marlin concedes that it was not a consumer from 2001 through 2006, or in 2009, when it filed its counterclaim, but it maintains that it was a consumer in 1999 and 2000 because in those years, it did not have assets of $25 million or more. Thus, the parties disagree only with respect to Marlin's status in the year 2000.

The record is silent regarding the basis for the trial court's ruling. In its motion, BPS argued that there was only one DTPA claim for all 200 transactions. Given that there was no dispute that Marlin was a consumer with respect to at least 23 of the 200 transactions, the trial court was within its discretion in finding that the claim was not groundless, as alleged by BPS, because there was at least some arguable basis in law and fact for the claim, and specifically, for Marlin's assertion of its status as a consumer based on those 23 transactions that took place when it did not have assets of $25 million or more. *See Donwerth,* 775 S.W.2d at 637. Accordingly, the trial court did not abuse its discretion in denying the request for sanctions.

BPS's twenty-seventh issue is overruled.

## XXVIII. ISSUE TWENTY-EIGHT

In its twenty-eighth issue, BPS contends that the trial "court erred and abused its discretion in the conduct of the pretrial conference because BPS was prejudiced by [the] court's [sic] requiring BPS to identify its exhibits and present its evidence per [the] court's instructions and then failed to require Marlin['s] . . . counsel to identify the exhibits it intended to present in the trial or identify its witnesses."

## A. Proceedings

On Thursday, November 4, 2010, the trial court held a pre-trial conference for the purpose of pre-admitting the parties' exhibits before trial. Although the trial court was able to go through BPS's exhibits and pre-admit them, BPS complained that Marlin had not provided an exhibit list, which led to the following exchange:

[Counsel for BPS]: As far as I know, this is the first time we've gotten the exhibits list from the defendants . . . .

[Counsel for Marlin]: And, Your Honor, that actually is true . . . .

The Court: All right. I'm - -

[Counsel for BPS]: The thing is, is that, we're now Thursday. We've got, I don't know how many, documents here, but it's at least an inch thick, of the defendant's exhibit list. There's no way we can be prepared - -

The Court: Let's just see how far we get.

. . . .

[Counsel for BPS]: Well, Your Honor, I object. This was all supposed to have been done by October 8th. And we still don't have them, and time's flying, and - -

The Court: I understand that.

[Counsel for BPS]: - - we've got less than three days.

33

The Court:          I understand.

[Counsel for BPS]:  And we just can't humanly do that and properly object.

The Court:          Okay. Based upon the description, I'm going to see how far we can get on the defendant's exhibit list.

                    . . . .

[Counsel for BPS]:  Well, do I get to object, or are we just gonna admit all their exhibits? I mean, I would like to object. First, I want clarification, and I would like to object to the exhibit, for the record.

The Court:          You may do so.

[Counsel for BPS]:  We would object to the, document Trial Exhibit No. 1, [because] . . . it is irrelevant . . . .

The Court:          Overruled. Admitted.

                    . . . .

[Counsel for BPS]:  Your Honor, I really must object. I brought my exhibits. I brought my documents. I gave a disk. And I'm sitting here having to rely upon a description by defense counsel, without being provided any documents.

The Court:          Pull each document.

                    . . . .

[Counsel for BPS]:  Okay. Now, so the document I've just been handed has no defense exhibit on it. All it has on it is - -

The Court:          Because I didn't instruct them, yet, to premark. That comes after I've admitted.

                    . . . .

[Counsel for BPS]:  If we're going to talk about preadmitting these documents, or are we gonna wait to trial to do their exhibits?

34

The Court:                We're going to do this, until all these documents have been reviewed, . . . even if we have to come back tomorrow. If you're gonna take three minutes - -

[Counsel for BPS]:   When are we gonna get ready?

The Court:                I just timed that first objection. It took two minutes, okay? If you want to do a two minute objection to each one, I'm here to hear it.

[Counsel for BPS]:   Well, probably, if I would have gotten these documents in advance, and I had gotten an exhibit list that the - -

I'm gonna announce surprise. I don't think we can be required to be treated like schoolboys when we've got something less than an hour ago and we've been dealing with the plaintiff's objections. We haven't had a chance to look at this thing, at all.

It's 167 pages.

. . . .

We should have gotten it by October 8th [sic] is when we were entitled to receive this information. And it's 168 pages. It contains Exhibit Nos. 1 through 2026 and - -

. . . .

The Court:                Okay. This is what we're going to [do]. We're gonna do this the old-fashioned way. We're going to agitate this jury, and we're gonna go through all these objections during the trial. I have set aside two days, which I have [been] informed was not enough for Daubert challenges; and then I – because I had Daubert challenges and then we were going to exhibit challenges, etc. The bottom line is, how many days do you want for pretrial?

[Counsel for BPS]:   Your Honor, if we had gotten things timely.

The Court:                Okay. That's it.

35

. . . .

[Counsel for BPS]: They've got their pants down and we're getting spanked and that's wrong.

The Court: I'm sorry. I am so tired of both sides whining in this case.

[Counsel for BPS]: We're not whining. We're not ready because of them.

The Court: Okay.

. . . .

You may make your objections at the time of trial. This thing is ready. We're going to trial on Monday . . . . [A]nd we'll make all the objections that we have not finished today at - - right in front of the jury.

. . . .

[Counsel for BPS]: Your Honor, we would like some clarification as to when we can have copies, because the Court has ordered the documents . . . .

The Court: Well, you know, when you do it at the time of trial, the objections at time of trial, you get them at trial.

[Counsel for BPS]: This is a wholly abuse of the discretion. They have given - - we have given them every one of our documents, we have preadmitted, we've given to them on disk - -

The Court: See you-all Monday at 9 - - well - -

. . . .

[Counsel for BPS]: No. I'm announcing not ready, right not, and I have not been ready because of the . . . failure of defense counsel to cooperate and follow the Court's orders.

. . . .

The Court: All right. When you are ready to allow me to talk, come get me.

. . . .

[Counsel for BPS]: Is the Court willing to have - - to order that they give us the exhibits, at least?

. . . .

The Court: Give them the exhibits.

. . . .

I'm ordering you to deliver a copy of all the exhibits that you intend to offer, whether - - whether you offer them or not. Because I know you're not gonna offer everything on those lists, but provide them a copy of everything on that exhibit list that you intend [to offer] . . . .

[Counsel for Marlin]: I'll be happy to, Your Honor.

The Court: All right. See you tomorrow . . . .

The next day, Friday, November 5, 2010, the trial court held another pre-trial hearing, and BPS moved for a continuance of trial. The following exchange occurred:

[Counsel for BPS]: [I]t is plaintiff's contention that the defendants have been dilatory in the manner that the pretrial in this case has taken. It has put plaintiff in the position of now having all their exhibits premarked, preadmitted . . . and put in the position now of when exhibits come in at trial by the defendant, is going to have to go through the process of presenting the exhibit, having to make objections before the jury that will greatly extend this case . . . .

Plaintiff believes they're being unduly prejudiced by being denied a pretrial conference with the plaintiff being the one punished for the defendant's dilatory conduct, and so, we're only requesting a continuance so to allow this Court to do full pretrial, struggle with these issues with the exhibits, and allow this case to proceed in a judicial and efficient manner.

. . . .

37

We believe . . . that putting the parties to a trial where one party whose been denied the benefit of a pretrial conference is unfair, it prejudices our case, it prejudices plaintiff's case, and puts the plaintiff in the position of allowing the defendants to really control the time that this case is now going to be required to be tried . . . .

The Court:    All right.  The motion for continuance is denied.

I don't know if you are aware of this, but this is our sixth jury trial setting in this case, our sixth.

. . . .

It is our sixth trial setting and four years in litigation . . . and the bottom line is, it's just time to saddle up and go, okay?

With regards to the exhibits, I received three amended exhibits on your part . . . but I will say this, the plaintiffs have been well prepared with regards to the requests of witness list, challenges, or whatever.

With regards to the defendants, I do not find that they have been well prepared with regards to their exhibits, and it has worked a difficulty.  And yesterday - - what is - - the record's gonna speak for itself about the frustrations and the allegations made in yesterday's court, to the point that I'm saying, "Okay, that's it, we're gonna go."

Now in my opinion, . . . the time - - who is going to be at an expense for time are the defendants, because I told you, I'm going to give them the exact amount of hours that I give the plaintiffs.  And they're going to have to go to a step-by-step procedure eating into their time.  Yours is already gonna be premarked and admitted.  You're gonna look real good in front of the jury, and it's not gonna take any time to get your exhibits in because they're already before the jury.

So, the disadvantage as to what happened yesterday - - because you-all know these documents, you have lived with these documents, you probably have taken them to bed with you thinking about them at night.

38

The bottom line is, is there's no surprise in this case with regards to the documents. There's really no surprise to the Court with regards to the documents. But the bottom line is, it's the disadvantage, their lack of preparation, or their lack of whatever happened in their office, I don't know. They're eating up their time to get their documents in. And when you make an objection, it's gonna be on their time, okay? So that's going to be to their disadvantage, not yours.

. . . .

[Counsel for BPS]: And if I may clarify, Your Honor, I realize that the Court says that we all know what the exhibits are and we've lived with them, but by them not having to identify what their exhibits are puts them at an advantage where they know what they're gonna do. Now they know what I'm gonna do, but I don't know what they're gonna do and it's the whole idea the pretrial and the pre-marking of exhibits and its puts the advantage in their - -

The Court: Have you received the hard copy of the exhibits?

[Counsel for BPS]: No, I haven't received anything.

The Court: I will consider that motion [to strike Marlin's exhibits] on Monday morning at 9:00 if they're not delivered to you before that time period. I want them delivered by 5:00 p.m. today.

. . . .

[Counsel for BPS]: I can't do it all this weekend.

The Court: Okay. I think you understand that I will reconsider your motion if you do not have all the documents delivered to you today.

[Counsel for BPS]: And I want to comment also. I don't think it's going to make us look good with the jury. I think if we have to continuously object and ask them, "Well, where did you get this? Where is this," I mean, to question authentication, we're gonna look like we got egg on our face like we didn't get prepared. Hiding the ball I thought was over in discovery.

39

The Court:  I don't think this is discovery. The - - it is to exchange the documents.

[Counsel for BPS]:  Well, then, the discovery is worthless if we can't get it organized to - -

The Court:  That's the order of the Court. We'll meet ready to go pick the jury on Monday.

[Counsel for BPS]:  Note our exception, Your Honor, because I think [sic] is gone awry from the beginning.

The Court:  I understand.

Finally, on the morning of Monday, November 8, 2010, the day of trial, a pre-trial

hearing was held during which the following exchange took place:

[Counsel for BPS]:  Your Honor, I'd like the record to reflect at 4:45 Friday night, I think it was commonly referred to as a document dump. First box of Marlin's proposed exhibits in this case weighed 37 pounds, jammed back full of papers, probably. The second box delivered to us the Marlin documents weighed 38 pounds, totally jam packed full of papers, a total of four reams, 10 reams to a paper, 500 pages in a ream. Both these boxes were dumped on us; no division; no separation, just plain old documents packed in a box so tight you can't open it . . . .

And we would submit to the Court this is unreasonable, it is unfair to the plaintiff. It puts the plaintiff at an extreme disadvantage, and there's absolutely no reference to where these documents come from. Most of these documents are not authenticated, and that's gonna have to go through the process before the jury. We would submit to the Court that, again, that this matter be continued so we can have a full pretrial in this case. The defendants have had the advantage of having our portion of the case pretried, but the plaintiff has not had the advantage of having the defendant's portion of the case pretried as pursuant to the Court's docket order, and the intent in spirit of the Texas Rules of Civil Procedure.

40

Secondly, we - - and that is our first - - and in the alternative, if the Court does not continue this case, then we move that the Court strike the Defendant's Exhibits 1 through 2026. There may be more, I don't know, but that's what happened . . . .

[Counsel for Marlin]: Your Honor, those were winnowed down, although I believe [counsel for BPS] . . . represented last there were 16 boxes. There were fewer than 16 - - there were five. That was winnowed down to two. I was told to get them to her by 5:00. The e-mails that we have show that they were sent before 5 . . . .

The Court: Are those exhibits numbered?

[Counsel for Marlin]: Yes, they are, Your Honor.

Furthermore, the exhibit list identified Bate stamp numbers, deposition exhibit numbers. The only documents that are not identified are BPS documents that were produced without Bate stamp number, and I had no way to identify them . . . . So . . . she does have that in the exhibit list, Your Honor. I have absolutely no problem trying to work with her and get her the exhibits on a daily basis, it will change, obviously, on the testimony, but I have no problem doing that, Your Honor.

The Court: All right. Motions denied.

. . . .

[Counsel for BPS]: The man has waited six years to have his day in court, now this happens, so it's going to make it for - -

The Court: I will not make - - I'm not making that conclusion.

[Counsel for BPS]: That's what they're gonna conclude when everything of ours comes without objection because they've been preadmitted, but we have to object to everything.

The Court: We may be able to handle that before we go to trial in the morning, and in the evenings so the jury does not see anything.

41

[Counsel for BPS]:  Well - -

The Court:  I'm prepared.  I've cancelled everything after work so that if we have to stay to make this a[] smooth trial, we will.

## B.  Discussion

On appeal, BPS contends that it "was prejudiced in presenting its case because the [trial] court gave an unfair advantage to Marlin by forcing BPS to show its hand while allowing Marlin to withhold its exhibits until offered at trial."  Quoting a decision by the First Court of Appeals in Houston pertaining to the granting of a new trial, BPS further contends, "Parties are entitled to rely on the court's pretrial order."  *Hull v. S. Coast Catamarans, L.P.*, 365 S.W.3d 35, 43 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).  Because the Houston case dealt with the granting of a new trial, we conclude that its holding is inapposite to the issue presented by BPS.  *See id.*

Furthermore, we reject BPS's contention that the trial court allowed Marlin to withhold its exhibits until the time of trial.  As set forth above, the trial court held a pre-trial hearing on November 4, 2010, during which Marlin was ordered to produce a hard copy of each exhibit to counsel for BPS as they were being offered for pre-admission into evidence.  Thus, at that time, counsel for BPS had an opportunity to see each exhibit that Marlin intended to offer.  When BPS continued to object to the pre-trial proceeding on the basis that it had not received copies of the documents in advance of the hearing as required by the docket control order, the trial court ordered Marlin to produce the documents by the following day.  The record further reflects that Marlin did, in fact, produce its marked exhibits to BPS on the afternoon of November 5, 2010, as

42

ordered by the trial court. Accordingly, we conclude that there is no merit to BPS's contention that the trial court allowed "Marlin to withhold its exhibits until offered at trial."

BPS's twenty-eighth issue is overruled.

## XXIX. ISSUE TWENTY-NINE

In its twenty-ninth issue, BPS contends that the trial court "erred and abused its discretion by not following [the] court's own docket control order by requiring Marlin to submit and pre-mark its trial exhibits and submit to [the] court and BPS counsel in an organized, usable and accessible format." We note that BPS has not provided an argument in support of this issue that is separate from its argument in support of its twenty-eighth issue. *See* TEX. R. APP. P. 38.1(i).

Regardless, our review of the record shows that the trial court enforced its docket control order by requiring counsel for Marlin to produce its pre-marked exhibits to BPS by 5:00 p.m. on Friday, November 5, 2010, which Marlin did. In addition, the trial court noted that Marlin's failure to comply with the docket control order had "worked a difficulty," which the trial court addressed by ordering that Marlin would not be allowed to have its exhibits pre-admitted before trial. BPS has not demonstrated that the trial court abused its discretion by taking this action in response to Marlin's failure to comply with the court's docket control order. Accordingly, the issue is overruled.

## XXX. ISSUE THIRTY

In its thirtieth issue, BPS contends that the trial court "erred and abused its discretion by denying [BPS's] Motions for Continuance after denying BPS a pre-trial hearing." We have reviewed BPS's brief and have found no argument in support of this issue except the argument offered in support of BPS's twenty-eighth and twenty-ninth

43

issues.  *See* TEX. R. APP. P. 38.1(i).  BPS has not provided any citations to authority pertaining to continuances and has failed to provide a substantive analysis for how the law applies to the facts of the case with respect to this issue.  *See MumboJumbo*, 350 S.W.3d at 722.  Accordingly, the issue has been inadequately briefed, and the error, if any, is waived.  *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's thirtieth issue is overruled.

## XXXI.  ISSUE THIRTY-ONE

In its thirty-first issue, BPS contends that the trial court "erred and abused its discretion in refusing to deny admission of documents or grant BPS's motion for continuance after Marlin . . . did a 'document dump' on BPS's counsel only four days prior to beginning the trial."  We have reviewed BPS's brief and have found no argument in support of this issue except the argument offered in support of BPS's twenty-eighth and twenty-ninth issues.  *See* TEX. R. APP. P. 38.1(i).  BPS has not provided any citations to authority pertaining to trial sanctions or continuances and has failed to provide a substantive analysis for how the law applies to the facts of the case with respect to this issue.  *See MumboJumbo*, 350 S.W.3d at 722.  Accordingly, the issue has been inadequately briefed, and the error, if any, is waived.  *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's thirty-first issue is overruled.

## XXXII.  ISSUE THIRTY-TWO

In its thirty-second issue, BPS contends that the trial court erred in excluding the testimony of J.F. "Chip" Morrow on the basis that Morrow was not qualified to give expert testimony.  According to BPS, Morrow would have testified that "Thompson was

44

a sub-broker, corroborated by Marlin paying Thompson directly and circumventing BPS and from Marlin's policies defining vendors and brokers." BPS also contends that, in addition, Morrow would have also "opined [that] Marlin lacked authority and failed to follow its policies and business practices in diverting funds and funding from third parties that resulted in fraudulent leases."

## A. Proceedings

The trial court ruled as follows:

With regards to Chip Morrow, I am going to sustain the motion to strike the testimony of Chip Morrow. I'm striking him with regards to qualifications as—and as to knowledge, not having specialized knowledge in the particular area that could assist the jury, and I don't have to go any further.

. . . .

He may be an expert in banking, but I do not find him to be an expert in this particular industry and I am striking him secondly as to knowledge with regards to whether what he is saying is—in my opinion what it was, it was a summary of factual contentions that other witnesses and/or documents can establish before the jury in determining what weight to give to it, and also I am striking him on reliability.

So he will not be testifying.

## B. Discussion

On appeal, BPS has challenged the trial court's ruling with respect to Morrow's qualifications as an expert, but BPS has not challenged the trial court's ruling with respect to lack of reliability. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995) ("[T]he trial court's role is to make the initial determination whether the expert's opinion is relevant and whether the methods and research upon which it is based are reliable."). The trial court's ruling with regard to reliability is an independent basis for excluding Morrow's testimony. *See id.* at 550 ("Rule 702 requires

45

expert testimony to be relevant and reliable."). BPS has not asserted, argued, or established that the trial court abused its discretion in striking Morrow's testimony based on the lack of reliability. *See id.* ("Because the proponent of the testimony in this case failed to establish that the proffered testimony was scientifically reliable, the trial court did not abuse its discretion by excluding the expert witness."). Accordingly, BPS has not challenged all possible grounds for the trial court's ruling, and the error, if any, is waived. *See Collin County v. Hixon Family P'ship*, 365 S.W.3d 860, 877 (Tex. App.—Dallas 2012, pet. denied) ("When an appellee urges several objections to a particular piece of evidence and, on appeal, the appellant complains of exclusion of the evidence on only one of those bases, the appellant has waived that issue for appeal because he has not challenged all possible grounds for the trial court's ruling that sustained the objection.").

BPS's thirty-second issue is overruled.

### XXXIII. ISSUE THIRTY-THREE

In its thirty-third issue, BPS contends that the trial court erred in excluding the testimony of graphologist Carol Ritter. The trial court's ruling was "based on [lack of] qualifications and on [lack of] reliability." According to BPS, "Ritter qualified as an expert with her years of practice experience, self-training and undergoing the rigors of self-assessment, and her use of the methods adopted as standards and guidelines." This issue is inadequately briefed, particularly with respect to the trial court's ruling on the lack of reliability, for which BPS has failed to provide a clear and concise argument with appropriate citations to authorities and to the record. *See* TEX. R. APP. P. 38.1(i).

Accordingly, we conclude that BPS has not demonstrated that the trial court abused its discretion in striking Ritter's testimony based on lack of reliability.

BPS's thirty-third issue is overruled.

### XXXIV. ISSUE THIRTY-FOUR

In its thirty-fourth issue, BPS contends that the trial court "erred in limiting the testimony of . . . [BPS's] expert witness, Roger Saenz, a certified public accountant and certified fraud examiner, and imposing restrictive vocabulary that Mr. Saenz was allowed to use as euphemism during his testimony, and disallowing words that are commonly used in courts and accounting audits and investigations where fraud or theft is suspected or proven." In support of this contention, BPS argues the following:

> Court erred and abused its discretion in limiting qualified expert Saenz's vocabulary during his testimony and forbidding BPS's counsel to elicit Saenz's opinions ". . . that, in effect, put him into a situation where he's asked to draw a legal conclusion based upon the questions that are gonna be submitted to the jury." Disallowing Saenz to use words that are elements of the claims or necessary in accurately describing conduct was unreasonable and arbitrary with no purpose other than to confuse the jury rather than help them understand the evidence.

We construe the foregoing as a challenge to the trial court's partial exclusion of Saenz's testimony.

### A. Applicable Law

"The exclusion of evidence is reversible error if the complaining party shows that the trial court committed error that probably caused the rendition of an improper judgment." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 812 (Tex. 2010). "Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence

excluded or admitted." *Dallas County v. Crestview Corners Car Wash*, 370 S.W.3d 25, 35 (Tex. App.—Dallas 2012, pet. denied).

## B. Discussion

Due to the inadequacy of BPS's briefing, it is unclear what testimony by Saenz was actually excluded. *See* TEX. R. APP. P. 38.1(i). On this record, BPS has not demonstrated an abuse of discretion or that the exclusion of the testimony probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a). Furthermore, having reviewed the entire record, we cannot conclude that the trial court's judgment turned on Saenz's excluded testimony. *See Castillo v. Gulf Coast Livestock Mkt., L.L.C.*, 392 S.W.3d 299, 308 (Tex. App.—San Antonio 2012, no pet.) ("[T]o successfully challenge an evidentiary ruling on appeal, an appellant must show that the judgment turns on the particular excluded evidence.").

BPS's thirty-fourth issue is overruled.

### XXXV. ISSUE THIRTY-FIVE

In its thirty-fifth issue, BPS contends as follows:

Court erred in entering judgment in favor of Marlin . . . in the amount of $38,203.77 ($35,373.39 + $2,829.88 pre-judgment interest) plus post judgment interest because:

a. Marlin failed to prove the necessary elements to recover for damages for breach of contract.

b. Marlin's proof of damages are not recoverable under any theory under Texas law.

c. Marlin did not suffer any damages.

The only element of Marlin's breach of contract claim that BPS has challenged in its brief is damages. *See Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex.

48

App.—Houston [1st Dist.] 1997, no writ) ("The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach."). Accordingly, we confine our analysis to the damages award. *See* TEX. R. APP. P. 47.1.

## A. Standard of Review

"When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it." *Bryan v. Gordon*, 384 S.W.3d 908, 913 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). "We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not." *Id*. "The evidence is legally sufficient if it would enable a reasonable and fair-minded person to find the fact under review." *Id*. "The fact finder is the sole judge of witness credibility and the weight to give their testimony." *Id*. "[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence." *Osterberg v. Peca*, 12 S.W.3d 31, 33 (Tex. 2000); *see also Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011) ("[W]e must measure the sufficiency of the evidence based on the jury charge.").

## B. Jury Charge and Verdict

In relevant part, the jury charge provided as follows:

### QUESTION NUMBER 5

Did Business Product Supply fail to comply with its agreement, if any, with Marlin Leasing Corporation?

. . . .

49

Answer "Yes" or "No" as to each element:

a.) by failing to deliver the equipment that Business Product Supply promised Marlin Leasing Corporation that it would deliver to customers?

Answer: <u>Yes</u>

b.) by taking possession of equipment that Marlin Leasing Corporation had purchased?

Answer: <u>No</u>

The charge further provided that if the jury answered "Yes" to any part of question 5, then the jury was to answer question 25, which provided as follows:

<u>QUESTION NUMBER 25</u>

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Marlin Leasing Corporation for its damages, if any, that resulted from the conduct of Business Product Supply?

Answer in dollars and cents for damages, if any.

a. The difference, if any, between the value agreed to for the equipment purchased by Marlin Leasing Corporation and the value received in the transaction.

Answer: <u>$35,373.39</u>

## C. Discussion

At trial, there was evidence that Marlin contracted with BPS to purchase certain equipment and that BPS breached the contract by providing equipment that was not as represented by BPS in that it was either inferior or did not have all the qualities that BPS represented and that were specified in the parties' agreement. BPS argues that Marlin cannot recover the benefit of the bargain because it subsequently leased the equipment in question to its customers and therefore suffered no pecuniary loss. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 531 (Tex. 2002) ("The ordinary meaning of 'pecuniary' is

50

of or pertaining to money.") (quotations omitted). However, Marlin maintains, and the evidence at trial showed, that BPS provided Marlin with equipment that was not as represented by BPS in that it was either inferior or did not have all the qualities that BPS represented and that were specified in the parties' agreement. As a result, Marlin realized a loss at the end of the lease term because it was unable to sell the equipment at issue for the price it had anticipated based on its agreement with BPS. According to Marlin, it was entitled to recover the difference in that value because it was the lost benefit of the bargain. We agree.

"The goal in measuring damages for a breach-of-contract claim is to provide just compensation [f]or any loss or damage actually sustained as a result of the breach." *Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 607 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "The normal measure of damages in a breach-of-contract case is the expectancy or benefit-of-the-bargain measure." *Id.* "The purpose of this measure of damages is to restore the injured party to the economic position it would have occupied had the contract been performed." *Id.*

In this case, the evidence at trial showed that if BPS had performed the contract as agreed, Marlin would have received equipment that had a greater value than the equipment actually delivered by BPS. The difference in value is the lost benefit of the bargain, which Marlin was entitled to recover because it is the normal measure of damages in a case involving breach of contract. *See id.* Therefore, the evidence was legally sufficient to establish that Marlin sustained damages in the lost benefit of the bargain. *See City of Keller*, 168 S.W.3d at 822. Furthermore, to the extent BPS contends that the evidence is insufficient to support the jury's finding regarding the

51

amount of damages, the issue has been inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

Accordingly, BPS's thirty-fifth issue is overruled.

## XXXVI. ISSUE THIRTY-SIX

In its thirty-sixth issue, BPS contends that, "[i]n the alternative, [the trial] court cannot award damages to Marlin under theories of negligent misrepresentation because Marlin[] failed in its proof and the elements of damages awarded to Marlin are not recoverable under negligent misrepresentation." There was only one damages award, and Marlin elected to recover under breach of contract. Accordingly, because we have we have already upheld the damages award based on Marlin's breach of contract claim, we do not reach this issue. *See* TEX. R. APP. P. 47.1.

BPS's thirty-sixth issue is overruled.

## XXXVII. ISSUE THIRTY-SEVEN

In its thirty-seventh issue, BPS contends that, "[i]n the alternative, the damages cannot be awarded to Marlin under fraud because: a. Marlin did not counter-claim for fraud against BPS.  b. Marlin's proof is not recoverable under a theory of fraud.  c. Fraud was not tried by waiver." Again, we do not reach this issue because we have already upheld the damages award based on Marlin's breach of contract claim. *See id.*

BPS's thirty-seventh issue is overruled.

## XXXVIII. ISSUE THIRTY-EIGHT

In its thirty-eighth issue, BPS contends that, "[i]n the alternative, if [the] Court of Appeals affirms the judgment, then [the trial] court erred by failing to apply [a] setoff and credit due [to] BPS [in the amount] of $29,414.40, plus prejudgment and post judgment

interest for Marlin's negligence found [by the jury]." According to BPS, the jury found that BPS had suffered damages in the amount of $122,560.01, for which Marlin was 24% responsible. Based on the foregoing, BPS argues that it was entitled to an offset in the amount of $29,414.40. We disagree.

In relevant part, the trial court's judgment states the following:

> The Court finds that recovery by Business Product Supply against Marlin Leasing Corporation is barred by the jury's finding in question 2 that Mark Thompson was its agent so that the combined negligence of Business Product Supply exceeds fifty percent (50%) and by the jury's findings in question 3 relating to when Business Product Supply should have known of the actions about which it complains and the applicable statute of limitations.

On appeal, BPS has not assigned error to the trial court's ruling that BPS was barred from recovering against Marlin because its percentage of responsibility was "greater than 50 percent." TEX. CIV. PRAC. & REM. CODE ANN. § 33.001 (West 2008); *Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error."). Accordingly, BPS has not established that the trial court committed reversible error in denying an offset because its percentage of responsibility was "greater than 50 percent." *See* TEX. R. APP. P. 44.1(a).

BPS's thirty-eighth issue is overruled.

## XXXIX. ISSUE THIRTY-NINE

In its thirty-ninth issue, BPS contends that, "[i]n the alternative, if [the] Court of Appeals affirms the judgment, then [the trial] court erred by failing to setoff and credit BPS $21,931.57 for its attorney fees and taxable court costs for Marlin pursuing a frivolous claim under the Texas Deceptive Trade Practices Act." We have already

53

overruled BPS's twenty-seventh issue in which BPS argued that the trial court committed reversible error in denying BPS's request for sanctions under the DTPA. Accordingly, for the same reasons stated above, we conclude that BPS has not demonstrated that the trial court committed reversible error by failing to apply a setoff and credit for sanctions under the DTPA. *See* TEX. R. APP. P. 47.1.

BPS's thirty-ninth issue is overruled.

## XL. ISSUE FORTY

In its fortieth issue, BPS contends that the trial court erred in granting a directed verdict on its negligent misrepresentation claim.[8] BPS provides the following statement in support of its contention that the trial court erred in granting a directed verdict on its negligent misrepresentation claim:

> Marlin knew BPS was ignorant it was paying Thompson points, using lease funding to reduce its past due receivables, distributing to third parties, and using Thompson's services for Marlin related business, for which Marlin induced BPS to take action that harmed BPS because BPS acted without knowledge of undisclosed facts and did not have an equal opportunity to discover.

In its brief, BPS has failed to (1) identify the grounds on which Marlin sought a directed verdict, (2) identify the grounds, if any, on which BPS opposed Marlin's motion for a directed verdict, and (3) provide a concise argument with appropriate citations to authorities and to the record to support its contention that the trial court erred in granting a directed verdict. *See* TEX. R. APP. P. 38.1(i). BPS has failed to apply the controlling law to the facts of the case in a substantive analysis that demonstrates that the trial

---

[8] This issue was not included in BPS's statement of the issues presented. *See* TEX. R. APP. P. 38.1(f). However, "[a]n appellant can preserve error in the body of their appellate brief, even if it is not separately listed in the notice of appeal or presented as an issue in the brief." *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012). Therefore, we address the issue, and for the same reason, we also address BPS's forty-first through eightieth issues, even though those issues were also not included in BPS's statement of the issues presented. *See id.*

54

court erred in granting the directed verdict. *See MumboJumbo*, 350 S.W.3d at 722. Accordingly, we conclude that the issue is inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's fortieth issue is overruled.

## XLI. ISSUE FORTY-ONE

In its forty-first issue, BPS contends that there is legally insufficient evidence to support the jury's finding to question 3a.

## A. Jury Charge and Verdict

In relevant part, the jury charge provided as follows:

### QUESTION NUMBER 3

By what date should Business Product Supply, in the exercise of reasonable diligence, have discovered

a.) that Marlin Leasing Corporation was taking direction from Mark Thompson in paying money to other leasing companies or to itself to satisfy customer leases?

Answer with a date (month, date, year) in the blank below.

Answer: September 1, 2000

## B. Discussion

As set forth above, question 3a pertained to Marlin's affirmative defense based on the applicable statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West Supp. 2011). The jury returned a verdict in favor of Marlin on BPS's claims for gross negligence, breach of contract, and violations of the DTPA. Furthermore, although the jury found that Marlin's negligence proximately caused damages to BPS, it found that Marlin was only 24% responsible for BPS's damages. The jury also found that the negligence of BPS and Thompson proximately caused

55

damages to BPS, and it found their proportionate responsibility to be 52% and 24%, respectively. The jury also found that Thompson was BPS's agent, and therefore, the verdict, as a whole, was in favor of Marlin on all claims asserted by BPS. Accordingly, the trial court entered a take-nothing judgment against BPS, stating that "recovery by . . . [BPS] against Marlin . . . is barred by the jury's finding in question 2 that Mark Thompson was its agent so that the combined negligence of . . . [BPS] exceeds fifty percent (50%)." Finally, as set forth above, BPS has not assigned error to the trial court's ruling that BPS was barred from recovering against Marlin because its percentage of responsibility was "greater than 50 percent." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.001.

In light of the foregoing, even if we were to conclude that the evidence is insufficient to support the jury's verdict on the statute of limitations defense, we would be unable to conclude that the error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a). Even without the statute of limitations defense, the take-nothing judgment is correct based on the jury's findings against BPS on its claims for gross negligence, breach of contract, and violations of the DTPA. In addition, the take-nothing judgment is correct as to the negligence claim based on the jury's findings against BPS on the issues of agency and proportionate responsibility, which have not been challenged on appeal. Accordingly, the error with respect to the statute of limitations defense, if any, is not reversible. *See id.*

BPS's forty-first issue is overruled.

56

## XLII.  ISSUE FORTY-TWO

In its forty-second issue, BPS contends that the jury's answer to question 3a is "against the great weight of the evidence."  For the reasons stated above in connection with BPS's forty-first issue, we conclude that the error, if any, is not reversible.  *See id.*

BPS's forty-second issue is overruled.

## XLIII.  ISSUE FORTY-THREE

In its forty-third issue, BPS contends that the evidence is legally insufficient to support the jury's answer to question 3b.

### A.  Jury Charge and Verdict

In relevant part, the jury charge provided as follows:

<u>QUESTION NUMBER 3</u>

By what date should Business Product Supply, in the exercise of reasonable diligence, have discovered

. . . .

b.)     that Marlin Leasing Corporation was paying points to Mark Thompson?

Answer with a date (month, date, year) in the blank below:

Answer:  <u>October 11, 1999</u>

### B.  Discussion

As set forth above, question 3b pertained to Marlin's affirmative defense based on the applicable statute of limitations.  *See* TEX. CIV. PRAC. & REM. CODE ANN.  § 16.003(a).  BPS contends that the evidence is legally insufficient to support the jury's answer to question 3b; however, for the reasons stated above in connection with BPS's

57

forty-first issue, we conclude that the error, if any, is not reversible. *See* TEX. R. APP. P. 44.1(a).

BPS's forty-third issue is overruled.

## XLIV. ISSUE FORTY-FOUR

In its forty-fourth issue, BPS contends that the jury's answer to question 3b is "against the great weight of the evidence." For the reasons stated above in connection with BPS's forty-first issue, we conclude that the error, if any, is not reversible. *See id.*

BPS's forty-fourth issue is overruled.

## XLV. ISSUE FORTY-FIVE

In its forty-fifth issue, BPS contends that the trial court erred in instructing the jury on "ratification" in question 5 because it did not name a specific person.

### A. Jury Charge and Verdict

In relevant part, the jury charge provided as follows:

QUESTION NUMBER 5

Did Business Product Supply fail to comply with its agreement, if any, with Marlin Leasing Corporation?

. . . .

[BPS's] . . . conduct includes the conduct of Mark Thompson if Mark Thompson acted with . . . [BPS's] authority or apparent authority.

A party's conduct includes conduct of others that the party has ratified. Ratification may be express or implied. Ratification occurred if . . . [BPS], though it may have been unaware of unauthorized conduct taken on its behalf at the time it occurred, retained the benefits of the transaction involving the unauthorized conduct after it acquired full knowledge of the unauthorized conduct. This results in ratification of the entire transaction.

. . . .

Answer "Yes" or "No" as to each element:

58

a.)  by failing to deliver the equipment that Business Product Supply promised Marlin Leasing Corporation that it would deliver to customers?

Answer:  Yes

b.)  by taking possession of equipment that Marlin Leasing Corporation had purchased?

Answer:  No

## B.  Discussion

BPS states that it objected to the ratification instruction in question 5, but we have reviewed the record and found no indication that BPS objected to the ratification instruction in question 5 based on its failure to "name a specific person."  *See Cruz*, 364 S.W.3d at 829.  Accordingly, the error, if any, was waived.  *See* TEX. R. CIV. P. 272.

BPS's forty-fifth issue is overruled.

## XLVI.  ISSUE FORTY-SIX

In its forty-sixth issue, BPS contends that the trial court erred in instructing the jury on "ratification" in question 21 because it did not name a specific person.

## A.  Jury Charge and Verdict

In relevant part, the jury charge provided as follows:

### QUESTION NUMBER 21

Did Business Product Supply make a negligent misrepresentation on which Marlin Leasing Corporation justifiably relied?

. . . .

A party's conduct includes conduct of others that the party has ratified.  Ratification may be express or implied.  Ratification occurred if . . . [BPS], though it may have been unaware of unauthorized conduct taken on its behalf at the time it occurred, retained the benefits of the transaction involving the unauthorized

conduct after it acquired full knowledge of the unauthorized conduct. This results in ratification of the entire transaction.

[BPS's] . . . conduct includes the conduct of Mark Thompson if Mark Thompson acted with . . . [BPS's] authority or apparent authority.

Answer "Yes" or "No."

Answer: Yes

## B. Discussion

On appeal, BPS complains that the ratification instruction in question 21 "make[s] no reference to Thompson or any specific person." Yet, at the charge conference, BPS objected to the instruction on the basis that "it's overly broad and does not limit the conduct that is sought to be ratified." "This objection does not comport with its complaint on appeal." *Cajun Constructors, Inc. v. Velasco Drainage Dist.*, 380 S.W.3d 819, 827 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). "Accordingly, this issue has not been preserved for our review." *Id.*

BPS's forty-sixth issue is overruled.

### XLVII. ISSUE FORTY-SEVEN

In its forty-seventh issue, BPS contends that the trial court erred in instructing the jury on "ratification" in question 22 because it did not name a specific person.

## A. Jury Charge and Verdict

In relevant part, the jury charge provided as follows:

QUESTION NUMBER 22

Did Business Product Supply commit fraud against Marlin Leasing Corporation?

. . . .

60

A party's conduct includes conduct of others that the party has ratified. Ratification may be express or implied. Ratification occurred if . . . [BPS], though it may have been unaware of unauthorized conduct taken on its behalf at the time it occurred, retained the benefits of the transaction involving the unauthorized conduct after it acquired full knowledge of the unauthorized conduct. This results in ratification of the entire transaction.

[BPS's] . . . conduct includes the conduct of Mark Thompson if Mark Thompson acted with . . . [BPS's] authority or apparent authority.

Answer "Yes" or "No."

Answer: <u>Yes</u>

## B. Discussion

On appeal, BPS complains that the ratification instruction in question 22 "make[s] no reference to Thompson or any specific person." Yet, at the charge conference, BPS objected to the instruction on the basis that "it's overly broad and does not limit the conduct that is sought to be ratified." "This objection does not comport with its complaint on appeal." *Cajun Constructors*, 380 S.W.3d at 827. "Accordingly, this issue has not been preserved for our review." *Id.*

BPS's forty-seventh issue is overruled.

## XLVIII. ISSUE FORTY-EIGHT

In its forty-eighth issue, BPS contends that the trial court erred in question 5 in placing "the 'ratification instruction/definition' consecutively with the instruction that BPS's conduct included Thompson's if the jury answered 'yes' on authority" because by doing so, the trial court made "a comment on the weight of the evidence and nudge[d] the jury by connecting BPS to Thompson's conduct diverting the jury's considering complicity between Marlin and Thompson." At the charge conference, BPS did not

61

make this objection, though it did object that the ratification instruction was "a comment on the weight of the evidence." *See* Tex. R. Civ. P. 272. However, the objection did not make the trial court aware of BPS's specific complaint that the two instructions should not be placed consecutively in the charge. *See Cruz*, 364 S.W.3d at 829. Accordingly, the error, if any, was waived. *See* Tex. R. Civ. P. 272.

BPS's forty-eighth issue is overruled.

## XLIX. Issue Forty-Nine

In its forty-ninth issue, BPS contends that the trial court erred in question 21 in placing "the 'ratification instruction/definition' consecutively with the instruction that BPS's conduct included Thompson's if the jury answered 'yes' on authority" because by doing so, the trial court made "a comment on the weight of the evidence and nudge[d] the jury by connecting BPS to Thompson's conduct diverting the jury's considering complicity between Marlin and Thompson." At the charge conference, BPS did not make this objection, though it did object to "the apparent authority instruction on the conduct of Mark Thompson because it nudges the jury towards a result." However, the objection did not make the trial court aware of BPS's specific complaint that the two instructions should not be placed consecutively in the charge. *See Cruz*, 364 S.W.3d at 829. Accordingly, the error, if any, was waived. *See* Tex. R. Civ. P. 272.

BPS's forty-ninth issue is overruled.

## L. Issue Fifty

In its fiftieth issue, BPS contends that the trial court erred in question 22 in placing "the 'ratification instruction/definition' consecutively with the instruction that BPS's conduct included Thompson's if the jury answered 'yes' on authority" because it

was "a comment on the weight of the evidence and nudge[d] the jury by connecting BPS to Thompson's conduct diverting the jury's considering complicity between Marlin and Thompson." At the charge conference, BPS did not make this objection, though it did object to "the instruction on Mark Thompson's conduct, being that of Business Product Supply because it . . . nudges the jury towards the result . . . and comments on the ultimate issue in the case." However, the objection did not make the trial court aware of BPS's specific complaint that the two instructions should not be placed consecutively in the charge. *See Cruz*, 364 S.W.3d at 829. Accordingly, the error, if any, was waived. *See* TEX. R. CIV. P. 272.

BPS's fiftieth issue is overruled.

## LI. ISSUE FIFTY-ONE

In its fifty-first issue, BPS contends that the trial court erred "in submitting two separate, and nearly identical negligence questions 6 and 8." At the charge conference, BPS did not make this objection. *See Cruz*, 364 S.W.3d at 829. Therefore, the error, if any, was waived. *See* TEX. R. CIV. P. 272.

BPS's fifty-first issue is overruled.

## LII. ISSUE FIFTY-TWO

In its fifty-second issue, BPS contends that the trial court erred "in submitting two separate, and nearly identical . . . comparative percentage questions, 7 and 10." At the charge conference, BPS did not make this objection. *See Cruz*, 364 S.W.3d at 829. Therefore, the error, if any, was waived. *See* TEX. R. CIV. P. 272.

BPS's fifty-second issue is overruled.

63

## LIII. ISSUE FIFTY-THREE

In its fifty-third issue, BPS contends that the trial court erred in submitting "question 6 [on Marlin's negligence because it] improperly limited the jury's consideration of Marlin's conduct to the method of accounting and funding." In its brief, BPS does not support this contention with an argument or substantive analysis with appropriate citations to authority. *See* TEX. R. APP. P. 38.1(i); *MumboJumbo*, 350 S.W.3d at 722. Accordingly, we conclude that the issue is inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's fifty-third issue is overruled.

## LIV. ISSUE FIFTY-FOUR

In its fifty-fourth issue, BPS contends that the trial court erred in submitting "question 9 [on BPS's negligence because] it did not limit the jury's consideration in answering the question." In its brief, BPS does not support this contention with an argument or substantive analysis with appropriate citations to authority. *See* TEX. R. APP. P. 38.1(i); *MumboJumbo*, 350 S.W.3d at 722. Accordingly, we conclude that the issue is inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's fifty-fourth issue is overruled.

## LV. ISSUE FIFTY-FIVE

In its fifty-fifth issue, BPS contends that the jury's "[n]egative findings that Thompson was not acting as Marlin's agent is [sic] against the great weight and preponderance of the evidence."

64

## A. Jury Charge and Verdict

In relevant part, the jury charge provided as follows:

### QUESTION NUMBER 2

Was Mark Thompson an agent of those named below with respect to the transactions that are the basis of this lawsuit?

For an agency relationship to have existed between those named below and Mark Thompson, those named below must have had both the right to assign tasks to Mark Thompson, and the right to control the means and details by which Mark Thompson was to accomplish those tasks.

Answer "Yes" or "No" as to each of the following:

a.      Business Product Supply:      <u>Yes</u>

b.      Marlin Leasing Corporation:      <u>No</u>

## B. Standard of Review

"In reviewing a factual sufficiency point, the court of appeals must weigh all of the evidence in the record." *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). "Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Id*. "[The parties] are entitled to a written opinion stating why the jury's verdict can or cannot be set aside." *Gonzalez v. McAllen Med. Ctr., Inc*., 195 S.W.3d 680, 681 (Tex. 2006). "A court of appeals must detail the evidence and clearly state why the jury's finding is factually insufficient when reversing a jury verdict, but [it] need not do so when affirming a jury verdict." *Id*. "[N]either the appellate rules nor [the Texas Supreme] Court require detailed recitations of the evidence when a factual sufficiency complaint is overruled." *Id*. "But merely stating that it is overruled does not count as providing the 'basic reasons' for that decision." *Id*. "Explaining whether reasonable jurors could discredit one or credit the

other without ignoring the great weight and preponderance of the evidence should require no more words than the court of appeals expended reciting the standard of review." *Id*. at 681–82.

## C. Discussion

In one sentence, BPS contends that the jury's negative answer to question 2b is against the great weight and preponderance of the evidence; "[h]owever, beyond this statement of the issue, [BPS's] brief does not present any argument as to why the evidence is factually insufficient." *See Bogart v. Star Bldg. Sys.*, No. 01-10-00446-CV, 2011 Tex. App. LEXIS 1747, at *6–7 n.3 (Tex. App.—Houston [1st Dist.] Mar. 10, 2011, pet. denied) (mem. op.). "[BPS's] brief does not . . . cite to any authority on this issue . . . or discuss how the law relating to factual sufficiency applies to the facts of this case." *See id.* BPS has not "demonstrate[d] on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). Accordingly, we conclude that the issue has been inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.[9]

---

[9] *See Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 141 (Tex. App.—Waco 2005, pet. denied) ("Ski River and the Davises' legal and factual sufficiency argument is one sentence in their 50 page brief and contains no citations to the reporter's record . . . . By their failure, Ski River and the Davises have waived their legal and factual sufficiency complaints about the jury findings."); *Gerdes v. Kennamer*, 155 S.W.3d 523, 534 (Tex. App.—Corpus Christi 2004, pet. denied) ("As their second subissue within issue four, the Gerdeses argue that the evidence is legally and factually insufficient to support the jury's finding of fraud damages. However, they do nothing more than summarily repeat the issue in their brief, without citation to legal authority or substantive analysis. Thus, we hold that the Gerdeses inadequately briefed the second part of issue four and failed to preserve it on appeal.") (citing TEX. R. APP. P. 38.1); *see also BFI Waste Sys. of N. Am., Inc. v. N. Alamo Water Supply Corp.*, No. 13-04-00069-CV, 2006 Tex. App. LEXIS 3007, at *17 n.5 (Tex. App.—Corpus Christi April 13, 2006, pet. denied) (mem. op.) ("Because appellants failed to provide any argument or citations to (1) the record relating to their factual sufficiency challenge to the jury's finding in response to Question No.1 and (2) their legal and factual sufficiency challenges to the jury's finding in response to Question No. 2, we conclude they are inadequately briefed and, therefore, waived."); *Bechtel Corp. v. City of San Antonio*, No. 04-04-00910-CV, 2006 Tex. App. LEXIS 816, at *18–19 (Tex. App.—San Antonio Feb. 1, 2006, no pet.) (mem. op.) ("According to Bechtel

BPS's fifty-fifth issue is overruled.

## LVI. ISSUE FIFTY-SIX

In its fifty-sixth issue, BPS contends that the jury's answer to question 4a was "against the great weight and preponderance of the evidence." As set forth above, in question 4a, the jury found that Marlin did not breach its agreement, if any, with BPS "[b]y failing to fund equipment purchased from . . . [BPS] via ACH electronic transfer to . . . [BPS's] account with Frost Bank." According to BPS, this finding is "against the great weight and preponderance of the evidence because there is no evidence BPS knew or authorized Marlin to use its vendor account for any purpose other than paying BPS for delivering equipment." Beyond this statement of the issue, BPS's brief does not provide any argument as to why the evidence is factually insufficient. See TEX. R. APP. P. 38.1(i). BPS's brief does not cite to any authority on this issue or discuss how the law relating to factual sufficiency applies to the facts of this case. See id. There is no substantive analysis of the issue. See MumboJumbo, 350 S.W.3d at 722. Accordingly, we conclude that the issue is inadequately briefed, and the error, if any, is waived. See Fredonia State Bank, 881 S.W.2d at 284.

BPS's fifty-sixth issue is overruled.

## LVII. ISSUE FIFTY-SEVEN

In its fifty-seventh issue, BPS contends that the jury's answer to question 4b was "against the great weight and preponderance of the evidence." As set forth above, in

---

and Dead On, 'there was not legally sufficient evidence to establish that the amounts claimed were reasonable out-of-pocket costs incurred or that the infrastructure was restored to the condition it was in immediately before the occurrence in question.' Thus, they argue that there is insufficient evidence to support the jury's findings that the City suffered damages in the amount of $ 148,180.49 and that SAWS suffered damages in the amount of $ 56,385.49. Bechtel and Dead On, however, just offer these conclusory statements and do not discuss the evidence at all. As such, they have inadequately briefed this issue.").

67

question 4b, the jury found that Marlin did not breach its agreement, if any, with BPS "[b]y failing to fund soft assets via ACH electronic transfer to . . . [BPS's] account with Frost Bank." According to BPS, this finding is "against the great weight and preponderance of the evidence because there is no evidence BPS knew or authorized Marlin to use its vendor account for any purpose other than paying BPS for delivering equipment." Beyond this statement of the issue, BPS's brief does not provide any argument as to why the evidence is factually insufficient. *See* TEX. R. APP. P. 38.1(i). BPS's brief does not cite to any authority on this issue or discuss how the law relating to factual sufficiency applies to the facts of this case. *See id.* There is no substantive analysis of the issue. *See MumboJumbo*, 350 S.W.3d at 722. Accordingly, we conclude that the issue is inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's fifty-seventh issue is overruled.

## LVIII. ISSUE FIFTY-EIGHT

In its fifty-eighth issue, BPS contends that the jury's answer to question 4c was "against the great weight and preponderance of the evidence." As set forth above, in question 4c, the jury found that Marlin did not breach its agreement, if any, with BPS "[b]y paying points or referral fees directly to Mark Thompson." According to BPS, this finding is "against the great weight and preponderance of the evidence because there is no evidence BPS knew or authorized Marlin to use its vendor account for any purpose other than paying BPS for delivering equipment." Beyond this statement of the issue, BPS's brief does not provide any argument as to why the evidence is factually insufficient. *See* TEX. R. APP. P. 38.1(i). BPS's brief does not cite to any authority on

68

this issue or discuss how the law relating to factual sufficiency applies to the facts of this case. *See id.* There is no substantive analysis of the issue. *See MumboJumbo*, 350 S.W.3d at 722. Accordingly, we conclude that the issue is inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's fifty-eighth issue is overruled.

## LIX. ISSUE FIFTY-NINE

In its fifty-ninth issue, BPS contends that the trial court erred in "disallow[ing] jury inquiry [into] whether Thompson acted outside the scope of his authority." Other than this statement of the issue, BPS's brief does not provide any argument to establish that the trial court erred with respect to the challenged aspect of the jury charge. *See* TEX. R. APP. P. 38.1(i). BPS's brief does not cite to any authority on this issue or discuss how the law relating to the jury charge applies to the facts of this case. *See id.* There is no substantive analysis of the issue. *See MumboJumbo*, 350 S.W.3d at 722. Accordingly, we conclude that the issue is inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's fifty-ninth issue is overruled.

## LX. ISSUE SIXTY

In its sixtieth issue, BPS contends that the trial court erred in "disallow[ing] jury inquiry [into] whether . . . Marlin and Thompson were in a joint enterprise." Other than this statement of the issue, BPS's brief does not provide any argument to establish that the trial court erred with respect to the challenged aspect of the jury charge. *See* TEX. R. APP. P. 38.1(i). BPS's brief does not cite to any authority on this issue or discuss how the law relating to the jury charge applies to the facts of this case. *See id.* There is

69

no substantive analysis of the issue.  *See MumboJumbo*, 350 S.W.3d at 722. Accordingly, we conclude that the issue is inadequately briefed, and the error, if any, is waived.  *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's sixtieth issue is overruled.

## LXI. Issue Sixty-One

In its sixty-first issue, BPS contends that the jury's answer to question 11 was "against the great weight and preponderance of the evidence . . . because BPS was forced to purchase the equipment at the end of the lease term to mitigate damages, and the 'buy out' amount Marlin demanded was the residual value that Marlin had no reasonable expectation of recouping."

**A  Jury Charge and Verdict**

In relevant part, the jury charge provided as follows:

<u>QUESTION NUMBER 11</u>

Did Marlin . . . engage in any false, misleading, or deceptive acts or practices that were a producing cause of damages to . . . [BPS]?

Answer "Yes" or "No" as to each "false, misleading or deceptive act or practice" that you find, if any:

"False, misleading, or deceptive act or practice" means any of the following:

a. Causing confusion or misunderstanding as to the source, sponsorship, approval or certification of the equipment sold to . . . [BPS] at the end of the lease term.

Answer:  <u>No</u>

b. Representing that the equipment sold to . . . [BPS] at the end of the lease term had characteristics, ingredients, uses, benefits, or quantities which they did not have.

Answer:  <u>No</u>

70

c. Representing that the equipment sold to . . . [BPS] at the end of the lease term was of a particular standard, quality, or grade, if they were of another.

Answer:  <u>No</u>

## B. Discussion

According to BPS, the jury's findings to question 11 were "against the great weight and preponderance of the evidence . . . because BPS was forced to purchase the equipment at the end of the lease term to mitigate damages, and the 'buy out' amount Marlin demanded was the residual value that Marlin had no reasonable expectation of recouping."  Beyond this statement of the issue, BPS's brief does not provide any argument to establish why the evidence is factually insufficient.  *See* TEX. R. APP. P. 38.1(i).  BPS's brief does not cite to any authority on this issue or discuss how the law relating to factual sufficiency applies to the facts of this case.  *See id.* There is no substantive analysis of the issue.  *See MumboJumbo*, 350 S.W.3d at 722. Accordingly, we conclude that the issue is inadequately briefed, and the error, if any, is waived.  *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's sixty-first issue is overruled.

## LXII. ISSUE SIXTY-TWO

In its sixty-second issue, BPS contends that the jury's answer to question 12 was "against the great weight and preponderance of the evidence . . . because BPS was forced to purchase the equipment at the end of the lease term to mitigate damages, and the 'buy out' amount Marlin demanded was the residual value that Marlin had no reasonable expectation of recouping."

71

## A. Jury Charge and Verdict

In relevant part, the jury charge provided as follows:

### QUESTION NUMBER 12

Did Marlin . . . engage in any unconscionable action or course of action in selling equipment to . . . [BPS] at the end of the lease term that was a producing cause of damages to . . . [BPS]?

. . . .

Answer "yes" or "no."

Answer: <u>No</u>

## B. Discussion

According to BPS, the jury's answer to question 12 was "against the great weight and preponderance of the evidence . . . because BPS was forced to purchase the equipment at the end of the lease term to mitigate damages, and the 'buy out' amount Marlin demanded was the residual value that Marlin had no reasonable expectation of recouping." Beyond this statement of the issue, BPS's brief does not provide any argument about why the evidence is factually insufficient. *See* TEX. R. APP. P. 38.1(i). BPS's brief does not cite to any authority on this issue or discuss how the law relating to factual sufficiency applies to the facts of this case. *See id.* There is no substantive analysis of the issue. *See MumboJumbo*, 350 S.W.3d at 722. Accordingly, we conclude that the issue is inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's sixty-second issue is overruled.

72

## LXIII. Issue Sixty-Three

In its sixty-third issue, BPS contends that the jury's answer to question 13 was "against the great weight and preponderance of the evidence."

### A. Jury Charge and Verdict

In relevant part, the jury charge provided as follows:

### QUESTION NUMBER 13

By what date should [BPS] . . . , in the exercise of reasonable diligence, have discovered the false, misleading, or deceptive act or practice or unconscionable acts of Marlin . . . ?

Answer with a date (month, date, year) in the blank below.

Answer: <u>N/A</u>

### B. Discussion

According to BPS, the jury's answer to question 13 was "against the great weight and preponderance of the evidence." However, as set forth above, the jury did not answer question 13 because question 13 was predicated on an affirmative answer to question 11 or question 12, and the jury answered "no" to both questions. Furthermore, as set forth above, BPS waived any challenge to the sufficiency of the evidence to support the jury's answers to question 11 and question 12 by failing to adequately brief the issues. *See id.* Accordingly, we conclude that BPS's challenge to the sufficiency of the evidence to support the jury's answer to question 13 is without merit.

BPS's sixty-third issue is overruled.

## LXIV. Issue Sixty-Four

In its sixty-fourth issue, BPS contends that the jury's answer to question 14 is "against the great weight and preponderance of the evidence."

73

## A. Jury Charge and Verdict

In relevant part, the jury charge provided as follows:

### QUESTION NUMBER 14

What sum of money, if paid now in cash, would fairly and reasonably compensate . . . [BPS] for its damages, if any, that resulted from the conduct you found?

Answer in Dollars and Cents, if any, as to each element of damages.

The difference, if any, in the value of the equipment that . . . [BPS] received and the value of the equipment as represented. The difference in value, if any, shall be determined at the time of the purchase of the equipment by [BPS] . . . at the end of the lease term.

Answer: N/A

## B. Discussion

According to BPS, the jury's answer to question 14 was "against the great weight and preponderance of the evidence." However, as set forth above, the jury did not answer question 14 because question 14 was predicated on an affirmative answer to question 11 or question 12, and the jury answered "no" to both questions. Furthermore, as set forth above, BPS waived any challenge to the sufficiency of the evidence to support the jury's answers to question 11 and question 12 by failing to adequately brief the issues. *See id.* Accordingly, we conclude that BPS's challenge to the sufficiency of the evidence to support the jury's answer to question 14 is without merit.

BPS's sixty-fourth issue is overruled.

## LXV. ISSUE SIXTY-FIVE

In its sixty-fifth issue, BPS contends that the jury's answer to question 15 is "against the great weight and preponderance of the evidence."

### A. Jury Charge and Verdict

In relevant part, the jury charge provided as follows:

### QUESTION NUMBER 15

Did Marlin . . . engage in any such conduct knowingly?

. . . .

Answer "Yes" or "No."

Answer: <u>N/A</u>

### B. Discussion

According to BPS, the jury's answer to question 15 was "against the great weight and preponderance of the evidence." However, as set forth above, the jury did not answer question 15 because question 15 was predicated on an affirmative answer to question 11 or question 12, and the jury answered "no" to both questions. Furthermore, as set forth above, BPS waived any challenge to the sufficiency of the evidence to support the jury's answers to question 11 and question 12 by failing to adequately brief the issues. *See id.* Accordingly, we conclude that BPS's challenge to the sufficiency of the evidence to support the jury's answer to question 15 is without merit.

BPS's sixty-fifth issue is overruled.

## LXVI. ISSUE SIXTY-SIX

In its sixty-sixth issue, BPS contends that the jury's answer to question 16 was "against the great weight and preponderance of the evidence."

75

## A. Jury Charge and Verdict

In relevant part, the jury charge provided as follows:

### QUESTION NUMBER 16

What sum of money, if any, in addition to actual damages, should be awarded to . . . [BPS] against Marlin . . . because Marlin['s] . . . conduct was committed knowingly?

. . . .

Answer in Dollars and Cents, if any.

Answer: N/A

## B. Discussion

According to BPS, the jury's answer to question 16 was "against the great weight and preponderance of the evidence." However, as set forth above, the jury did not answer question 16 because question 16 was predicated on an affirmative answer to question 15, which the jury did not reach because question 15 was predicated on an affirmative answer to question 11 or question 12, and the jury answered "no" to both questions. Furthermore, as set forth above, BPS waived any challenge to the sufficiency of the evidence to support the jury's answers to question 11 and question 12 by failing to adequately brief the issues. *See id.* Accordingly, we conclude that BPS's challenge to the sufficiency of the evidence to support the jury's answer to question 16 is without merit.

BPS's sixty-sixth issue is overruled.

## LXVII. ISSUE SIXTY-SEVEN

In its sixty-seventh issue, BPS contends that the trial court erred in "[f]ailing to instruct the jury in question 21 . . . regarding Marlin's duty to exercise ordinary care to

76

protect its interests regarding BPS's alleged negligent misrepresentation . . . ." BPS has failed to provide a clear and concise argument in support of this contention. *See* TEX. R. APP. P. 38.1(i). BPS has failed to provide a substantive analysis to establish that the trial court had no discretion to refuse the requested instruction. *See MumboJumbo*, 350 S.W.3d at 722; *see also Thota*, 366 S.W.3d at 687. Accordingly, the issue has been inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's sixty-seventh issue is overruled.

## LXVIII. ISSUE SIXTY-EIGHT

In its sixty-eighth issue, BPS contends that the trial court erred because question 21 "tilted the jury towards the answer because it suggested Thompson's conduct was BPS's conduct." BPS has failed to provide a clear and concise argument in support of this contention. *See* TEX. R. APP. P. 38.1(i). BPS has failed to provide a substantive analysis in support of this issue. *See MumboJumbo*, 350 S.W.3d at 722; *see also Thota*, 366 S.W.3d at 687. Accordingly, the issue has been inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's sixty-eighth issue is overruled.

## LXIX. ISSUE SIXTY-NINE

In its sixty-ninth issue, BPS contends that the trial court erred because question 22 "tilted the jury towards the answer because it suggested Thompson's conduct was BPS's conduct." BPS has failed to provide a clear and concise argument in support of this contention. *See* TEX. R. APP. P. 38.1(i). BPS has failed to provide a substantive analysis in support of this issue. *See MumboJumbo*, 350 S.W.3d at 722; *see also*

*Thota*, 366 S.W.3d at 687. Accordingly, the issue has been inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's sixty-ninth issue is overruled.

## LXX. ISSUE SEVENTY

In its seventieth issue, BPS argues that there is insufficient evidence to support the jury's answer to question 21. Other than this statement of the issue, BPS's brief does not provide any argument as to why the evidence is insufficient. *See* TEX. R. APP. P. 38.1(i). BPS's brief does not cite to any authority on this issue or discuss how the law relating to sufficiency of the evidence applies to the facts of this case. *See id*. There is no substantive analysis of the issue. *See MumboJumbo*, 350 S.W.3d at 722. Accordingly, we conclude that the issue is inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's seventieth issue is overruled.

## LXXI. ISSUE SEVENTY-ONE

In its seventy-first issue, BPS argues that there is insufficient evidence to support the jury's answer to question 22. Other than this statement of the issue, BPS's brief does not provide any argument about why the evidence is insufficient. *See* TEX. R. APP. P. 38.1(i). BPS's brief does not cite to any authority on this issue or discuss how the law relating to sufficiency of the evidence applies to the facts of this case. *See id*. There is no substantive analysis of the issue. *See MumboJumbo*, 350 S.W.3d at 722. Accordingly, we conclude that the issue is inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's seventy-first issue is overruled.

## LXXII. Issue Seventy-Two

In its seventy-second issue, BPS contends that "[p]lacing defensive question 3 prior to BPS's affirmative question 4 is a comment on the weight of the evidence because question 3b implies that BPS should have known of the existence of the payments to Thompson then question 4c inquires if paying points directly to Thompson was a breach of the agreement."

### A. Proceedings

At the charge conference, BPS made the following objections to question 3:

Plaintiff objects to Question No. 3, the defensive issue of statute of limitations because there is no evidence to support the submission of statute of limitations.

Plaintiff objects to No. 3 because there's not even a scintilla of evidence that would provide for submitting statute of limitations.

Plaintiff objects to Question No. 3 because it is multifarious and the first 3-A., in that the jury could result in conflicting answers and conflicting evidence.

The Plaintiff objects to Question No. 3 because it's misleading as to the lapping scheme of paying form [sic] from one customer account and applying it to another unrelated customer account.

Plaintiff objects to Question No. 3 because it is misleading in that the complaint was to apply one lease funding to another unrelated funding.

Plaintiff objects to Question No. 3 because it directs the jury to an answer.

Plaintiff objects to Question No. 3 because it nudges the jury to find an answer without - - Plaintiff objects to Question No. 3 because it's a comment on the weight of the evidence. That concludes Question 3.

### B. Discussion

As set forth above, BPS made a number of objections to question 3, including that it was "a comment on the weight of the evidence," but BPS did not make the trial

court aware of its specific complaint that "[p]lacing defensive question 3 prior to BPS's affirmative question 4 [wa]s a comment on the weight of the evidence." *See* Tex. R. Civ. P. 272. Accordingly, the issue has not been preserved for our review, and the error, if any, is waived. *See Cruz*, 364 S.W.3d at 829. Moreover, even if the issue had been preserved for our review, the error pertaining to the statute of limitations, if any, is not reversible for the reasons stated in our discussion of BPS's forty-first issue. *See* Tex. R. App. P. 44.1(a).

BPS's seventy-second issue is overruled.

## LXXIII. Issue Seventy-Three

In its seventy-third issue, BPS contends that "[q]uestions 3, 3a and 3b are not hooked to any particular question rendering its [sic] application meaningless and should be disregarded." For the reasons stated above in connection with BPS's forty-first issue, we conclude that the error pertaining to the statute of limitations, if any, is not reversible. *See id.*

BPS's seventy-third issue is overruled.

## LXXIV. Issue Seventy-Four

In its seventy-fourth issue, BPS contends that "[t]he compound format of Question 3a is a comment on the weight of the evidence and does not answer the ultimate issue." For the reasons stated above in connection with BPS's forty-first issue, we conclude that the error pertaining to the statute of limitations, if any, is not reversible. *See id.*

BPS's seventy-fourth issue is overruled.

## LXXV.  ISSUE SEVENTY-FIVE

In its seventy-fifth issue, BPS complains that the trial court erred in submitting question 3 because "[e]ach portion of the question may have a different response."  For the reasons stated above in connection with BPS's forty-first issue, we conclude that the error pertaining to the statute of limitations, if any, is not reversible.  *See* TEX. R. APP. P. 44.1(a).

BPS's seventy-fifth issue is overruled.

## LXXVI.  ISSUE SEVENTY-SIX

In its seventy-sixth issue, BPS complains that the trial court erred in submitting question 3 because part b "is global."  For the reasons stated above in connection with BPS's forty-first issue, we conclude that the error pertaining to the statute of limitations, if any, is not reversible.  *See id.*

BPS's seventy-sixth issue is overruled.

## LXXVII.  ISSUE SEVENTY-SEVEN

In its seventy-seventh issue, BPS contends that the trial court erred "by ignoring the substantive, non-discretionary directive in failing to submit questions, instructions and definitions of all issues raised by the written pleadings and evidence, that likely resulted in the rendition of an improper judgment."  In support of this issue, BPS has not identified any questions, instructions, or definitions that were raised by the pleadings and evidence that the trial court refused to submit to the jury.  We have already addressed the other assertions of jury charge error raised in its appellate brief.  To the extent BPS's seventy-seventh issue seeks to raise additional jury charge error beyond

81

what we have discussed, the issue is inadequately briefed, *see* TEX. R. APP. P. 38.1(i), and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's seventy-seventh issue is overruled.

## LXXVIII. ISSUE SEVENTY-EIGHT

In its seventy-eighth issue, BPS contends that the "[e]vidence is insufficient to establish that at time of the lease agreements, BPS had no intention of performing under the lease agreements at the time they were entered into." BPS does not identify which jury question this challenge pertains to or what claim or defense is being challenged by this issue. BPS merely states, with no supporting citations to the record, that "[t]he evidence reveals that BPS intended to perform because it obtained signed delivery tickets from each customer when the equipment was delivered and BPS believed Marlin would confirm the equipment delivered." *See* TEX. R. APP. P. 38.1(i). BPS does not discuss how the law relating to sufficiency of the evidence applies to the facts of the case. *See id.* There is no substantive analysis of the issue. *See MumboJumbo*, 350 S.W.3d at 722. Accordingly, we conclude that the issue is inadequately briefed, and the error, if any, is waived. *See Fredonia State Bank*, 881 S.W.2d at 284.

BPS's seventy-eighth issue is overruled.

## LXXIX. ISSUE SEVENTY-NINE

In its seventy-ninth issue, BPS contends that "[t]here is insufficient evidence Marlin relied upon any representations BPS allegedly made regarding the equipment in the lease agreements." As set forth above in our discussion of BPS's thirty-fifth issue, we have upheld the damages award to Marlin based on Marlin's breach of contract

claim. *See* TEX. R. APP. P. 47.1. Accordingly, because this issue does not pertain to Marlin's breach of contract claim, the error, if any, would not entitle BPS to reversal of the damages award to Marlin. *See* TEX. R. APP. P. 44.1(a).

BPS's seventy-ninth issue is overruled.

## LXXX. ISSUE EIGHTY

In its eightieth issue, BPS contends that "Marlin's reliance, if any, was not reasonable." As set forth above in our discussion of BPS's thirty-fifth issue, we have upheld the damages award to Marlin based on Marlin's breach of contract claim. *See* TEX. R. APP. P. 47.1. Accordingly, because this issue does not pertain to Marlin's breach of contract claim, the error, if any, would not entitle BPS to reversal of the damages award to Marlin. *See* TEX. R. APP. P. 44.1(a).

BPS's eightieth issue is overruled.

## LXXXI. CONCLUSION

The judgment of the trial court is affirmed.

_____
NORA L. LONGORIA
Justice

Delivered and filed the
29th day of August, 2013.

83